LEISURE PRODUCTS, INC. v. MITCHELL JEROME CLIFTON, LARRY ADAM SHUNKEWILER, A. J. TRUCKING COMPANY AND AERO TRUCKING COMPANY

No. 797SC333

(Filed 18 December 1979)

1. Evidence § 17; Automobiles § 90.4— tow truck—flashing amber light—negative evidence inadmissible—failure to display amber light—instructions improper

    In an action to recover for damages to plaintiff's truck which was struck while being towed by one defendant, the trial court erred, first, in allowing the jury to consider negative evidence that the amber light on defendant's tow truck was not flashing, since the witness who gave the negative testimony could not tell whether the light was flashing because of the noonday sun, and, second, in charging the jury to answer the issue of the tow truck driver's negligence in the affirmative if it found that a proximate cause of the collision was the driver's violation of G.S. 20-130.2 in failing to "display an amber light," since it was uncontradicted that defendant's tow truck was equipped with the lights required by law.

2. **Evidence § 34.1; Automobiles § 49.2— tractor trailer driver—admissions—substantive evidence**

In an action to recover for damages to plaintiff's truck sustained when a tractor trailer collided with it, the trial court erred in limiting the jury's consideration of the tractor trailer driver's earlier admissions which conflicted with his trial testimony to the issue of the driver's credibility, since the driver's early explanations of the collision were competent as substantive evidence on the issue of his negligence.

APPEAL by the defendant Clifton from *Bruce, Judge.* Judgment entered 7 November 1978 in Superior Court, NASH County. Heard in the Court of Appeals on 27 November 1979.

Plaintiff instituted this civil action seeking to recover $21,647.78 for damages to its 1973 International truck as a result of a motor vehicle collision on 26 April 1977 in Johnston County. According to the evidence developed at trial, the accident happened around noon in the southbound lanes of Interstate 95 just outside Benson, North Carolina. Plaintiff's witness Ricky Vann Bass testified that he was employed as a truck driver for the plaintiff at that time and had been driving the van-type truck [hereinafter referred to as the van] prior to the accident. He was headed to Sumter, South Carolina with a load of mobile home supplies. As he headed south on I-95 outside Benson, the van broke down. Vass pulled it onto the emergency strip to the right of the lanes of travel, determined that he could not correct the trouble, and called a tow-truck.

The tow-truck was owned and operated by the defendant Clifton. He testified that the truck, a 1960 F-750 Ford, was in "perfect condition" on 26 April 1977, and that he had been in the garage business for approximately 30 years. Clifton hooked the plaintiff's van to his tow-truck, using two chains and a tow-sling to lift it up and secure it. Then he and Bass climbed into the cab of the tow-truck and pulled onto the highway. Clifton was driving in the right-hand lane, heading south towards his garage. According to Bass, they had proceeded approximately 100 yards when the collision occurred. He testified, "We started down I-95 . . . and we were talking and the next thing I knew, we were turned over." The van also overturned and immediately caught fire. Bass and Clifton scrambled out of the tow-truck, which thereafter caught fire, and saw that a tractor-trailer had collided with the rear of the van. The tractor portion of it had overturned

and was on fire. Subsequently, it was determined that the tractor-trailer, which was carrying ten packages of glass weighing approximately 40,000 pounds, was being operated by the defendant Shunkewiler. At trial, Shunkewiler testified that, on the day of the accident, he was employed as a long-haul truck driver by the defendant A. J. Trucking Company. He had left the company's terminal in Baltimore, Maryland, at approximately 3:00 a.m. that day and was headed to Lumberbridge, North Carolina, about 100 miles south of the accident scene. The glass was being shipped under a bill of lading issued by the defendant Aero Trucking Company.

The evidence established that the weather conditions, at the place and time of the accident, were clear and sunny, and that the surface of the road was concrete.

In its complaint, plaintiff charged that the combined negligence of the defendants Clifton and Shunkewiler caused the collision. With respect to the defendant Clifton, plaintiff alleged the following negligent acts:

A. He failed to maintain a proper lookout.

B. He failed to install the necessary signals and lights upon the wrecker.

C. He was operating a wrecker on the public highway at a speed which impeded the flow of traffic.

Shunkewiler's negligence, plaintiff contended, consisted of the following: .

A. He failed to maintain a proper lookout.

B. He operated a motor vehicle on the public highway at a high and dangerous rate of speed for the conditions then existing.

C. He followed the vehicle in front of him too closely.

D. He failed to apply his brakes within sufficient time to avoid a collision, or if he did apply his brakes, he was operating a vehicle with inadequate brakes.

E. He failed to reduce his speed within sufficient time to avoid a collision.

F. He ran into the rear of the vehicle immediately preceding him.

At the close of all the evidence, the trial court submitted the following issues to the jury, which were answered by it as indicated:

1. Was the plaintiff, Leisure Products, Inc., damaged by the negligence of the defendant, Larry Adam Shunkewiler?

ANSWER: Yes

2. Was the plaintiff, Leisure Products, Inc., damaged by the negligence of the defendant, Mitchell Jerome Clifton?

ANSWER: yes

3. What amount, if any, is the plaintiff, Leisure Products, Inc., entitled to recover for damage to personal property?

ANSWER: $20,000.00

4. Was the cargo being transported in the vehicle operated by the defendant, Larry Adam Shunkewiler, the glass specified in the bill of lading dated April 20, 1977, issued by Aero Trucking, Inc., defendant, under a certificate issued by the Interstate Commerce Commission?

ANSWER: Yes

From a judgment that plaintiff recover $20,000.00, together with interest, jointly and severally of all four defendants, the defendant Clifton appealed.

*Fields, Cooper and Henderson, by Milton P. Fields, for plaintiff appellee.*

*Walter L. Horton, Jr., for the defendant appellant Clifton.*

HEDRICK, Judge.

[1] Defendant Clifton's sole question on appeal relates to the trial judge's charge to the jury. In particular, he attacks that portion of the charge wherein the judge instructed the jury with respect to the alleged violation by Clifton of G.S. § 20-130.2, which provided, at the time of the accident herein, in pertinent part as follows:

> *Use of amber lights on certain vehicles.* — All wreckers operated on the highways of the State shall be equipped with an amber-colored flashing light which shall be so mounted and located as to be clearly visible in all directions from a distance of 500 feet.

(We note that this section was amended by 1979 Session Laws, ch. 1, sec. 1, effective 26 January 1979, by substituting a comma for the period at the end of the sentence set out above and adding thereafter the following language: "which light shall be activated when towing a vehicle.")

The judge read this statute to the jury and instructed it that a violation thereof was "negligence within itself." Then, in his final mandate concerning the issue of the defendant Clifton's negligence, he charged as follows:

> [I]f the plaintiff has proven by the greater weight of the evidence, that at the time of the collision, that the defendant Mitchell Jerome Clifton was negligent in *any one* or more of the following respects, in that he failed to drive in a marked lane, or, that he failed to give a signal when turning from a direct line, or, *he failed to display an amber light,* that is, if the plaintiff has proved by the greater weight of the evidence, that the defendant Mitchell Jerome Clifton was negligent in *any one* or more of those respects and if the plaintiff has further proved by the greater weight of the evidence that such negligence was a proximate cause of the plaintiff's damages, then it would be your duty to answer this issue, yes, in favor of the plaintiff.

[Our emphasis.]

Defendant Clifton does not contend that Judge Bruce misstated the law.. Rather, he argues that the evidence fails to show that he violated G.S. § 20-130.2, or that the "presence or absence of an amber colored flashing light was a proximate cause of the collision between the vehicles." Thus, he urges that it was prejudicial error for Judge Bruce to instruct the jury at all with regard to this statute. We agree, for a number of reasons.

First, it is uncontradicted that defendant's tow-truck was equipped with the lights required by law. Benson Police Officer, Joseph Smith, who witnessed the accident, testified, "The tow-

truck was standard and was equipped with an amber light on top of its cab." Plaintiff's own employee, Mr. Bass, corroborated this testimony and, more significantly, stated, "When I got into the tow-truck, the driver had the flashing light operating on his tow-truck." The record is wholly devoid of any evidence that the tow-truck was not equipped with lights in accordance with law.

Secondly, plaintiff's contention that the amber light was not flashing, and thus was not visible as mandated by § 20-130.2, is, likewise, not supported by the evidence. Both Bass and Clifton testified that the light was flashing. No witness positively asserted that the light was not on.

Plaintiff directs our attention, however, to the testimony of two witnesses that they did not *see* the light flashing. Police Officer Smith said there was an amber light on top of the tow-truck, but he could not "recall" whether it was flashing "since it was in the noonday sun." The defendant Shunkewiler testified, "I did not see any lights on the van or the wrecker." On cross-examination, this witness testified further as follows:

> Q. Is it sort of a courtesy in the profession of long haul truck driving that if you are going to pass another vehicle, you flash your headlights in the day time?

> A. In the noon time, it . . . you wouldn't hardly be able to see it.

> Q. At noon time, you say headlights would be very difficult to see?

> A. Yes sir, it would be.

Negative evidence, that is, evidence that the witness did not see or did not hear, is ordinarily much less reliable than affirmative testimony showing the contrary fact. It is weak at best, and is admissible as some evidence of the negative inference only upon a showing that the witness so testifying was in a position to hear or see, or would have heard or seen. *Vann v. Hayes*, 266 N.C. 713, 147 S.E. 2d 186 (1966); *Morris v. Jenrette Transport Co.*, 235 N.C. 568, 70 S.E. 2d 845 (1952). The inherent problem with such evidence was well-stated by our Supreme Court in the case of *K. B. Johnson & Sons, Inc. v. Southern Railway Co.*, 214 N.C. 484, 487-88, 199 S.E. 704, 706 (1938):

The basic psychological, as well as probative, weakness of negative evidence lies in this: The fact may have taken place in the sight or hearing of a person who may not have perceived it; or who perceived it falsely because of defective perceptive apparatus, unfavorable surrounding conditions, or the state of mind of the witness; or who, having originally perceived it correctly, has since forgotten it.

Given these manifest infirmities, it becomes absolutely mandatory for the witness to demonstrate that he or she was in a position to hear or see, meaning that the witness was "so situated that in the ordinary course of events he would have heard or seen the fact had it occurred." *Id.* at 488, 199 S.E. at 707. If, upon examining the surrounding circumstances and conditions of perception of the witness, it becomes evident that the witness was not so situated, the negative testimony is meaningless. It is of no probative force and should not be considered by the jury. *Blanton v. Frye*, 272 N.C. 231, 158 S.E. 2d 57 (1967); *Ballard v. Ballard*, 230 N.C. 629, 55 S.E. 2d 316 (1949).

A fair reading of the evidence in the case at bar demonstrates that the brightness of the noonday sun prevented both Smith and Shunkewiler from being able to perceive whether the amber-colored light was flashing on defendant Clifton's tow-truck. In similar cases, a witness's testimony that he did not see lights burning on a stalled vehicle in his path of travel, in the face of testimony that he was momentarily blinded by the lights of an on-coming vehicle, has been held insufficient to require its submission to the jury since the witness was in no position to see what he said he did not see. *Blanton v. Frye, supra; Morris v. Jenrette Transport Co., supra.*

The same is true in this case. It is a matter of common knowledge that the brightness of the sun can render "invisible" headlights, turn signals, and traffic-control lights. The sun can have a blinding effect on one's ability to see. We hold that neither Smith nor Shunkewiler was so situated as to be able to see the flashing light, and, thus, their negative testimony that they did not see it lacks sufficient probative value to require its submission to the jury. "The rights of persons and things ought not to rest, and the law will not permit them to depend, upon the uncertain testimony of a witness who says he did not [see]," when he

was in no position to see. *K. B. Johnson & Sons, Inc. v. Southern Railway Co., supra* at 488, 199 S.E. at 707.

It is clear from the foregoing discussion that the absence of a flashing light on the tow-truck, or the failure of the defendant Clifton to turn it on, could not, under these circumstances, be a proximate cause of the collision. Since the defendant Shunkewiler could not have seen the light, whether it was on or off is of no consequence. It follows that the judge erred, first, in allowing the jury to consider negative evidence that the light was not flashing and, second, in charging it to answer the issue of defendant Clifton's negligence in the affirmative if it found that a proximate cause of the collision was Clifton's violation of the statute in failing to "display an amber light". Since we cannot ascertain upon what grounds the jury adjudged Clifton negligent, its verdict against him cannot stand.

*A fortiori*, we reject plaintiff's contention that the jury verdict can be justified on the grounds that Clifton hoisted the van in such a manner as to obscure the amber light, and thereby violated the statute. Plaintiff asks us to engage in sheer speculation that, if the van had not been so hoisted, the defendant Shunkewiler would have been more likely to see the flashing amber light and, therefore, could have avoided the accident. This we will not do. To the contrary, we are persuaded that a violation of G.S. § 20-130.2 in whatever respect, if any violation existed, did not contribute in any degree to the occurrence of this collision. The record establishes to our satisfaction that this accident proximately resulted from either (1) the sole negligence of the defendant Shunkewiler in any of the respects alleged by plaintiff; or (2) the sole negligence of the defendant Clifton in allowing the van to cross over the center line and into Shunkewiler's path; or (3) the joint and concurring negligence of these two defendants in these respects.

[2] Error in the charge on the foregoing account alone entitles the defendant Clifton to a new trial. However, we find it necessary to discuss, briefly, his sixth assignment of error by which he attacks another portion of the court's instructions relating to extrajudicial admissions of the defendant Shunkewiler.

State Highway Patrol Trooper Charles Ryals, who arrived on the scene shortly after the accident, testified as follows:

The truck driver [Shunkewiler] first stated that he was changing gears and looked up and saw the vehicle in front of him and could not get out of the way to keep from hitting it. He said that he was in the outside or right lane at the time. He said he did not have time to go around it before he hit it at that time.

Plaintiff's employee Bass testified that he talked to Shunkewiler at the scene, and Shunkewiler "said he didn't really know what had happened, that he must have dozed off or something." Subsequently, Shunkewiler changed his version of what had happened and told Trooper Ryals that "he was going to pass the vehicle he was coming up on and as he pulled out to pass, the vehicle came over into his lane and he hit it." Shunkewiler told only the second version to the jury.

With respect to the earlier conflicting statements, Judge Bruce charged the jury to consider such testimony only as "bearing upon the truthfulness of that particular witness in deciding whether you will believe or disbelieve his testimony at this trial." In other words, Judge Bruce limited the jury's consideration of Shunkewiler's admissions to the issue of his credibility. Defendant Clifton argues that the statements were competent as substantive evidence on the issue of Shunkewiler's negligence. We agree.

More than a century ago, Justice Ruffin, speaking for the Court in *McRainy v. Clark*, 4 N.C. 698 (1818), declared: "The rule is universal that whatever a party says or does shall be evidence against him, to be left to the jury. . . . I know of no solitary exception to this rule, and cannot imagine one." *See also McDonald v. Carson*, 95 N.C. 377 (1886). Although exceptions have since been created—none of which are applicable here—the rule has stood the test of time. 2 Stansbury's N.C. Evidence, *Admissions* § 167 (Brandis rev. 1973). *See State v. Gaines*, 283 N.C. 33, 194 S.E. 2d 839 (1973). Admissions of a party, especially when made against his own interest, bear strong probative force and, when relevant to the issues, are competent substantive evidence against the party making the statements. The weight accorded them, like all the other evidence in the case, is for the jury. We are of the opinion, and so hold, that Shunkewiler's early explanations of the collision are competent substantive evidence on the issue of his negligence, and are accordingly admissible against him to the benefit of all other parties.

Defendant Clifton brings forward and argues other assignments of error. We do not find it necessary to discuss them since they are not likely to occur at the new trial. For the reasons hereinabove set out, as to the plaintiff's claim against the defendant Clifton, there must be a

New trial.

Judges MARTIN (Robert M.) and WELLS concur.