**In re Christopher H. REED, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 451941).**

**No. 07–BG–88.**

District of Columbia Court of Appeals.

Submitted May 20, 2008.
Decided June 5, 2008.

Before FARRELL and GLICKMAN, Associate Judges, and SCHWELB, Senior Judge.

PER CURIAM:

In this reciprocal disciplinary proceeding, the Board on Professional Responsibility has recommended that this court impose discipline identical in all material respects[1] to the discipline ordered by the Supreme Court of Arizona. Specifically the Board has proposed that Reed be suspended from practice in the District of Columbia for three years and that he be required to demonstrate fitness as a condition of reinstatement. Although Bar Counsel urged the Board to recommend disbarment, he now takes no exception to the recommended discipline. Reed has not participated in the proceedings in this jurisdiction and has not excepted to the proposed sanction.

■ The relevant facts, to the extent that the Board knew them,[2] as well as the applicable legal principles, are described in the Board's concise and well-reasoned Report and Recommendation, which was written by James P. Mercurio, Esquire. We adopt the Board's Report and attach a copy thereof to this opinion. Our deferential standard of review of the Board's recommendation is even more deferential where, as here, neither Bar Counsel nor the respondent has excepted to it. *See, e.g., In re Goldsborough*, 654 A.2d 1285, 1288 (D.C.1995). Indeed, where there has been no objection, imposition of identical discipline "should be close to automatic, with minimum review by both the Board and this court." *In re Cole*, 809 A.2d 1226, 1227 n. 3 (D.C.2002) (per curiam).

Accordingly, Christopher H. Reed is hereby suspended from practice in the District of Columbia for a period of three years. As a condition of reinstatement, Reed must furnish proof of rehabilitation in a proceeding pursuant to D.C. Bar R. XI, § 16.

*So ordered.*[3]

## ATTACHMENT

### *REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY*

This reciprocal discipline matter is predicated on an order of the Supreme Court of Arizona (the "Arizona Court") that (1) suspended Respondent from the practice of law for three years with the equivalent of a fitness requirement,[1] (2) ordered that,

---

1. Although, in addition to suspending Reed, the Supreme Court of Arizona ordered him to pay restitution to eight individuals and to the Clerk of the Maricopa County Court and also ordered "post-reinstatement" probation, the Board has recommended that we not impose these additional sanctions because they would be duplicative or otherwise inappropriate.

2. Significant parts of the Arizona proceedings are under seal.

3. For purposes of reinstatement, Reed's suspension shall be deemed to run from the date that Reed files an affidavit in compliance with D.C. Bar R. XI, § 14(g).

1. In Arizona, an attorney suspended for more than six months "must show by clear and

upon reinstatement, he be placed on probation for two years (with terms to be decided at the time of reinstatement), and (3) ordered him to pay a total of $25,818.58 in restitution to eight individuals and the Maricopa County, Arizona, Clerk of Court. Respondent has filed no response to Bar Counsel's statement and has not otherwise communicated to the District of Columbia Court of Appeals (the "Court") or the Board on Professional Responsibility (the "Board") regarding this matter. Bar Counsel urges that we recommend the "substantially different reciprocal discipline of disbarment." Statement of Bar Counsel, p. 4.

We have concluded that no basis exists for substantially different discipline in this matter and recommend that the Court impose a suspension for three years, with a requirement that Respondent furnish proof of his rehabilitation as a condition of his reinstatement. We do not recommend that the Court adopt the other provisions of the Arizona Court's disciplinary order. *See In re Winick,* Bar Docket No. 308-02, *et al.* (BPR May 12, 2004), *recommended adopted,* 866 A.2d 51 (D.C.2005) (per curiam).

## I. *THE FACTS*

Respondent is a member of the District of Columbia Bar, having been admitted by

convincing evidence that [he or she] has been rehabilitated and possesses the moral qualifications and knowledge of the law required for admission to practice law...." AZ Sup.Ct. R. 64(a); *see also* AZ Sup.Ct. R. 64(e).

2. Bar Counsel mailed a copy of its February 23, 2007 letter to the Court to Respondent's secondary address on record with the District of Columbia Bar because Bar Counsel had previously determined that Respondent's preferred address of record was no longer correct. When that mailing was returned as undeliverable, Bar Counsel attempted to notify Respondent of this reciprocal proceeding at

motion on September 6, 1996, and is also a member of the Arizona Bar. *See* Statement of Bar Counsel, Attachment A. Bar Counsel reports that Respondent "has been administratively suspended [in the District of Columbia] since November 9, 1997, for nonpayment of dues and failure to file required annual registration statements." Statement of Bar Counsel, p. 1.

### A. *Initiation of this Reciprocal Matter*

The Arizona disciplinary order was entered on June 29, 2005. Respondent did not report the discipline to Bar Counsel, as D.C. Bar R. XI, § 11(b) requires. Bar Counsel instead learned of the Arizona discipline from the ABA National Lawyer Regulatory Data Bank and, on February 23, 2007, filed a certified copy of the Arizona Court's order with the Court. Statement of Bar Counsel, p. 3.[2] The Court, on March 14, 2007, issued an order suspending Respondent pending final resolution of this matter and referring the case to the Board with the direction that the Board recommend "whether identical, greater or lesser discipline should be imposed as reciprocal discipline or whether the Board, instead, elects to proceed *de novo.*" Order, *In re Reed,* No. 07-BG-88 (D.C. Mar. 14, 2007).

his address of record with the Arizona Bar. That attempt also was unsuccessful as the mailing was returned as undeliverable, but the Postal Service return contained a forwarding address. Bar Counsel has used that forwarding address in all subsequent mailings and has not received any returned mail sent to that address. *See* Supplemental Statement of Bar Counsel, filed on July 13, 2007. We are satisfied that Bar Counsel's efforts to serve Respondent are sufficient to satisfy the service requirement in this matter. *See In re Powell,* 860 A.2d 836, 837 (D.C.2004) (per curiam).

### B. *The Arizona Disciplinary Proceeding*

The Arizona Court's disciplinary order was based upon a Hearing Officer's Report (hereinafter "Arizona Report"). *See* Statement of Bar Counsel, Appendix C. The Arizona Report reveals that the parties filed a Tender of Admissions and Agreement for Discipline by Consent ("Tender of Admissions") and a Joint Memorandum in Support of Agreement for Discipline by Consent ("Joint Memorandum"). Arizona Report, p. 1. Significantly, the Hearing Officer reports that the Tender of Admissions and the Joint Memorandum contain Respondent's description of "the circumstances (financial, emotional and medical) that led to the period in Respondent's life when all of the problems at issue here arose." Arizona Report, p. 30. The two documents, however, are not part of the record in this reciprocal matter. They were, in fact, sealed during the Arizona hearing "at the request of Respondent and with the agreement of the State Bar." *Id.* The Arizona Court, taking note of the absence of any discretionary review and declining a *sua sponte* review, entered the disciplinary sanction recommended by the Hearing Officer without material alteration. Statement of Bar Counsel, Attachment B.

### C. *Misconduct Established in the Arizona Proceeding*

The Arizona Report contains 157 paragraphs in which the Hearing Officer states the underlying facts as revealed in 14 separate investigative files involved in this matter. Immediately thereafter the report describes "conditional admissions" filed by the parties with respect to each of the 14 investigative files. *See* Arizona Report ¶¶ 157–169. Regarding the first four files discussed in the report (File Nos. 02–0068, 02–1576, 02–2188, and 03–0030) and in eight other files (File Nos. 03–0632, 04–0812, 04–0895, 04–0982, 04–1122, 04–1149, 04–1205, and 04–1265), the report states, among other things, that "Respondent conditionally admits his conduct in this file violated Rule 42, Ariz. R.S. Ct. . . . , ER 1.15 (safekeeping property)." Arizona Report, ¶¶ 158–159, 164–169.

That Arizona rule (ER 1.15) is not materially different from D.C. Rule of Professional Conduct 1.15, the rule under which misappropriation of client funds is commonly charged by District of Columbia Bar Counsel. Moreover, the Hearing Officer wrote that based on an Arizona "Staff Examiner's" review of a reconstruction of Respondent's trust account transactions, Respondent "temporarily misappropriated" a number of clients' funds. Arizona Report ¶¶ 40–47. We thus read the Arizona Report as finding 12 instances of misappropriation on the part of Respondent.

With respect to each instance of misappropriation, however, the Arizona State Bar made a critical admission that "it could not prove a violation of . . . ER 8.4(c) (misconduct involving dishonesty) due to a lack of clear and convincing evidence that Respondent had the requisite intentional state of mind." *See, e.g.,* Arizona Report ¶¶ 158, 164.[3] Nothing in the record suggests that the Hearing Officer made any

---

3. Regarding File No. 03–0632, Respondent conditionally admitted that he violated ER 8.4(c) (misconduct involving dishonesty), but the Arizona State Bar also conditionally admitted that it could not prove a violation of the same rule. Nothing in the record, however, suggests that the Hearing Officer accepted Respondent's conditional admission over the State Bar's conditional admission. *See, e.g.,* Arizona Report ¶¶ 48–56 (no finding of intention in the Hearing Officer's specific findings related to File No. 03–0632).

finding that was not in accordance with the parties' conditional admissions. We therefore take as established in this reciprocal proceeding that the misappropriations are part of the misconduct for which Respondent was disciplined in Arizona, but we also recognize the force of the Arizona State Bar's conditional admission that the "requisite intentional state of mind" for "misconduct involving dishonesty" was not established by clear and convincing evidence in the Arizona proceeding. *Id.* In sum, the misappropriations for which Respondent was disciplined in Arizona were not established to have been intentional or reckless.

Apart from the misappropriation violations, Respondent's disciplinary offenses are many and, in some cases, serious. The other principal disciplinary offenses include eight violations of rules governing lack of diligence, nine cases of failure to communicate with clients, 16 instances of misconduct prejudicial to the administration of justice, and 15 knowing failures to respond to a disciplinary authority's lawful demands for information. Moreover, the Hearing Officer found that this extraordinary tally of serious offenses was aggravated by Respondent's "bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency" and his "indifference to making restitution." Arizona Report, p. 30.

But the Hearing Officer also found four factors in mitigation, which she took into account when selecting the appropriate sanction. First, Respondent had no previous disciplinary record. Second, he had experienced "personal or emotional problems," the nature of which is not given in the record on this reciprocal matter, but was spelled out in the parties' conditional admissions and the Joint Memorandum that were filed under seal in the Arizona proceeding. Third, Respondent made a "full and free disclosure to [the] disciplinary board [and showed] a cooperative attitude toward [the] proceedings."[4] And fourth, the Hearing Officer had "no doubt of [his] remorse." *Id.*

## II. *ANALYSIS*

■ Identical reciprocal discipline is imposed in reciprocal cases, unless the respondent demonstrates, by clear and convincing evidence, that one or more of the five exceptions set forth in D.C. Bar R. XI, § 11(c) applies.[5] D.C. Bar R. XI, § 11(f);

---

4. The Hearing Officer explained the apparent inconsistency between her finding both "bad faith obstruction" as an aggravating factor and "cooperative attitude" in mitigation as follows:

> While Respondent generally ignored the proceedings against him in their early stages, he later cooperated considerably with the State Bar during the development of the Tender and Joint Memo, including his agreement to the payment of restitution without requiring the State Bar, the witnesses and the Hearing Officer to go through a lengthy and difficult hearing.

Arizona Report, p. 30.

5. The five exceptions under D.C. Bar R. XI, § 11(c), are as follows:

(1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or (2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject; or (3) The imposition of the same discipline by the Court would result in grave injustice; or (4) The misconduct established warrants substantially different discipline in the District of Columbia; or (5) The misconduct elsewhere does not constitute misconduct in the District of Columbia.

*In re Zilberberg*, 612 A.2d 832, 834 (D.C. 1992). But when a respondent does not contest reciprocal discipline, the Board's function is limited to reviewing the foreign proceeding "sufficiently to satisfy itself that no obvious miscarriage of justice would result in the imposition of identical discipline . . . ." *In re Childress*, 811 A.2d 805, 807 (D.C.2002) (quoting *In re Spann*, 711 A.2d 1262, 1265 (D.C.1998)). *See also In re Cole*, 809 A.2d 1226, 1227 n. 3 (D.C. 2002) (per curiam) (when respondent does not object, imposition of identical discipline "should be close to automatic, with minimum review by both the Board and this court").

The Arizona proceedings accorded Respondent due process. Respondent entered a formal *Agreement for Discipline by Consent*, and the violations found by the Hearing Officer were consistent with the conditional admissions he made in support of that agreement. The record thus reveals no "infirmity of proof." D.C. Bar R. XI, § 11(c)(2). Nothing in the record suggests that the Court's "imposition of the same discipline" as that imposed in Arizona "would result in grave injustice," and the record contains no evidence that the conduct for which he was disciplined "does not constitute misconduct in the District of Columbia." D.C. Bar R. XI, §§ 11(c)(3) and (5).

Bar Counsel, however, contends that "the repeated nature of the conduct coupled with Respondent's awareness of the financial mismanagement indicates that his actions were at least reckless," and as such they "warrant[ ] substantially different discipline in the District of Columbia." Statement of Bar Counsel, p. 3; D.C. Bar R. XI, § 11(c)(4). In support of its contention, Bar Counsel advances the proposition that a "long line of established precedent demonstrates that Respondent's *intentional or reckless misappropriation* would result in disbarment in the District of Columbia." Statement of Bar Counsel, p. 4 (emphasis added); *see also id.* at 5–6.

■ Respondent's misappropriations, however, were not found in the Arizona disciplinary proceeding to have been either intentional or reckless. The Arizona State Bar conditionally admitted, with respect to every investigative file showing that Respondent misappropriated funds in his trust account, that "it could not prove a violation of [the rule against misconduct involving dishonesty] due to a lack of clear and convincing evidence Respondent had the requisite intentional state of mind." Arizona Report ¶ 158. That concession explicitly ruled out any finding of intentional misappropriation in the Arizona proceeding. It also renders it unlikely that the Arizona Hearing Officer deemed Respondent's misappropriations reckless. Those misappropriations occurred over a period beginning in August 2001 and continuing until mid–2004—more than two and a half years. *See* Arizona Report ¶¶ 40–47, 123–26. If the Arizona State Bar had shared Bar Counsel's view that Respondent's repetitive conduct was clear and convincing evidence that he was reckless—and therefore conscious of the serious risk of loss that his withdrawals created—it would hardly have conceded, as it did, that at no time in that two-and-a-half-year period were Respondent's misappropriations intentional.

■ The Arizona Hearing Officer, on the record before her, made no finding that Respondent's misappropriations were intentional or reckless. Her failure to so find is consistent with the Arizona State Bar's conditional admissions-and could have been based upon evidence of "emotional and medical" circumstances that was sealed in the Arizona hearing and not made part of the record in this reciprocal

matter. It may well be the case that, were Bar Counsel to initiate an original disciplinary proceeding against Respondent in the District of Columbia and rely upon the same record that the Arizona Hearing Officer had before her, a hearing committee might find intentionality or recklessness in Respondent's lengthy period of repetitive behavior. But the Court has made clear that, unless the exceptions in D.C. Bar R. XI, §§ 11(c)(1), (2) or (5), are applicable (and none applies in this matter), reciprocal discipline is not to be based upon an independent evaluation of the evidence to find violations that the disciplining court did not find. In *In re Belli*, 766 A.2d 526, 527 (D.C.2001) (per curiam), the Court held that "both D.C. Bar R. XI, § 11 and notions of comity dictate that we give deference to the assessment of an attorney's conduct and the measure of discipline imposed by the other jurisdiction." *See also In re Pennington & Wiggins*, 921 A.2d 135, 142 (D.C.2007).

In this matter, the highest court in Arizona imposed a disciplinary sanction that was agreed to by both the Arizona State Bar and Respondent and was approved by an Arizona Hearing Officer after a full hearing and a careful examination of the evidence. Bar Counsel concedes that no reason exists in this matter to invoke the exceptions in D.C. Bar R. XI, §§ 11(c)(1), (2) or (5), but would nonetheless have us rely upon an incomplete Arizona record, of which an ostensibly pertinent portion has been sealed in Arizona for reasons of confidentiality, to find that Respondent's misappropriations were intentional or reckless and therefore warrant a substantially different sanction than the Arizona Court deemed suitable. A finding of that nature would fail to give effect to the Arizona Hearing Officer's failure to make any such finding and would fly in the face of the

Arizona State Bar's concession that it could not support a finding of intentionality. Mindful of the deference due the original disciplining court in our own reciprocal proceeding and of the Court's holding in *Zilberberg*, 612 A.2d at 835, that "in a reciprocal proceeding, when a greater sanction is sought in the District of Columbia, the record must affirmatively show that a greater sanction is warranted," we decline to adopt Bar Counsel's proposal that Respondent be disbarred.

With regard to the other conditions in the Arizona disciplinary order, we recommend the approach taken in *In re Winick*, Bar Docket No. 308–02, *et al.* (BPR May 12, 2004), *recommendation adopted*, 866 A.2d 51 (D.C.2005) (per curiam). Before us in that case was a Florida disciplinary order that imposed "post-reinstatement probation," a disciplinary sanction that we pointed out "[o]ur system has, at least until now, not imposed." *Winick* at 11. We noted that, "as a practical matter, it would be difficult for our jurisdiction to monitor the progress of Respondent's post-reinstatement probation in Florida on an ongoing basis." *Id.; but see In re Pinckney*, 759 A.2d 1069, 1070 & 1072–73 (D.C.2000) (per curiam) (Court adopted Board recommendation in reciprocal case from a neighboring jurisdiction (Maryland) that a practice monitor be ordered "to the same extent required by the Maryland court"). In addition, because "Respondent should not be subject to a double requirement of restitution," we did not recommend in *Winick* a separate restitution in the Court's reciprocal discipline order, but concluded that "Respondent's efforts to comply with the restitution requirement imposed by Florida shall be a proper subject of inquiry at any fitness hearing in this jurisdiction." *Winick* at 11. On review, the Court confined its sanction in *Winick* to a suspension with "[r]einstate-

ment ... conditioned on [Respondent's] demonstrating fitness to practice law." *In re Winick,* 866 A.2d at 54. Because this matter, like *Winick,* involves a distant disciplining jurisdiction, we see no reason to recommend a departure from the *Winick* precedent in this matter.

### III. *CONCLUSION*

The Board on Professional Responsibility recommends that, as identical reciprocal discipline in this matter, Respondent Christopher H. Reed be suspended from the practice of law in the District of Columbia for a period of three years and that as a condition of reinstatement he furnish proof of his rehabilitation in a proceeding under D.C. Bar R. XI, § 16. In that proceeding, Respondent's performance of the other conditions imposed by the Arizona Court, though not imposed here as independent conditions or sanctions, can be addressed.

For purposes of reinstatement, the suspension should be deemed to run from the date Respondent files an affidavit in compliance with D.C. Bar R. XI, § 14(g). *See In re Slosberg,* 650 A.2d 1329, 1331–33 (D.C.1994).

BOARD ON PROFESSIONAL RESPONSIBILITY

By: /s/ James P. Mercurio

All members of the Board concur in this Report and Recommendation except Mr. Smith, who did not participate.