Benjamin RAMEY, Petitioner,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent, PEPCO, Intervenor.

No. 08–AA–1369.

District of Columbia Court of Appeals.

Submitted Dec. 2, 2009.

Decided July 1, 2010.

Benjamin Ramey, pro se.

Robert J. Spagnoletti, Attorney General for the District of Columbia at the time the statement was filed, and Todd S. Kim, Deputy Solicitor General, and Edward E. Schwab, Deputy Solicitor General at the time, were on the statement in lieu of brief for respondent.

Kevin J. O'Connell and Saty Reddy, Rockville, MD, were on the brief for intervenor.

Before RUIZ and KRAMER, Associate Judges, NEBEKER, Senior Judge.

NEBEKER, Senior Judge:

Benjamin Ramey petitions for review of an order of the Compensation Review Board ("CRB") affirming the decision of the Administrative Hearings Division ("AHD") of the Office of Hearings and Adjudication ("OHA") in the District of Columbia Department of Employment Services ("DOES"), to deny petitioner's workers' compensation benefits. The administrative law judge (ALJ) for the AHD found that petitioner did not sustain psychological harm which arose out of, and during the course of, his employment. Thus, he was not entitled to workers' compensation benefits under the District of Columbia Workers' Compensation Act ("WCA"), D.C.Code § 32–1501 *et seq.* We hold that the ALJ's findings are supported by substantial evidence and that the CRB's decision is in accordance with the law. Therefore, we affirm the order of the CRB.

### I.

The instant petition arises out of events that occurred over Labor Day weekend, on or around August 30, 2003. Just before midnight on the evening in question, petitioner Ramey, a conduit installer at Potomac Electric Power Company (PEPCO), was called into work to drive a commercial motor vehicle on "storm duty." At approximately 3:00 a.m., "an assignment came up" for petitioner and his supervisor, Gregory Johnson, Sr., sent a crew out in search of him. Another employee found petitioner and reported back to Mr. Johnson that petitioner "was in no condition to drive." When petitioner reported to Mr. Johnson's office, Mr. Johnson noticed that his speech was slurred, his sentences were unintelligible, his breath smelled of alcohol, he was unsteady on his feet and his eyes were a little bloodshot.

Mr. Johnson transported petitioner to the main PEPCO office building, where they met with David Duarte, who was then a Senior Labor Relations Specialist, whose duty it was to determine whether a PEPCO employee needed to be drug tested upon suspicion of impairment related to drug or alcohol use. Mr. Duarte also noticed that petitioner "reeked of alcohol" and that he was "very, very unsteady on his feet ... was slurring his words ... [and] his eyes were very, very bloodshot." Mr. Duarte testified that he made the decision to test petitioner under the company policy requiring drug and alcohol testing of an employee who arrives to work under the apparent influence of drugs or alcohol. Lamar Dudley, a union representative, was also called to the scene and remained with petitioner throughout the morning.

Mr. Johnson testified that petitioner was told that he would be taken to undergo drug and alcohol testing. Negussie Birratu, an employee relations specialist, was also called to the PEPCO office. He traveled with Mr. Johnson, Mr. Dudley, and petitioner in an attempt to locate a drug and alcohol testing facility. After two unsuccessful attempts, at two separate medical facilities, to have petitioner tested, and after driving around for approximately five hours, the men returned to PEPCO's main office. Thomas Hyde, a drug-testing coordinator for the federal government, was then called to the PEPCO office building to conduct a Breathalyzer test. Mr. Hyde testified that petitioner tested positive for drugs and/or alcohol.

After petitioner's test results came back positive, he was placed on a five-day crisis suspension and told that he had to enroll in a drug and alcohol rehabilitation program in order to maintain his employment. Petitioner returned to work in early September and continued to work without incident until he was placed on Decision Making Leave ("DML") on September 30, 2003. The DML led to petitioner's placement on a three-year probation, and to his referral to the KOLMAC alcohol rehabilitation program on October 13, 2003. Petitioner was discharged from the program on October 27, 2003, because he continued to drink alcohol. He then sought medical and psychological treatment, at which time he was diagnosed by a counselor with post-traumatic stress disorder ("PTSD"). He was terminated from his employment after his employer discovered that he was discharged from the rehabilitation program.

Petitioner testified that he was mistreated and disrespected on the morning of August 30, 2003. He indicated that he initially was unaware of where he was being taken and that he feared for his life. He claimed that he began experiencing nightmares, symptoms of anxiety, trouble sleeping and a loss of interest in daily activities shortly after the incident. He also claimed that he urinated on himself because he was not allowed to use the bathroom while the group was driving around in search of a testing facility and that everyone at his office was talking about it, causing him to feel embarrassed. Therefore, petitioner filed for workers' compensation after he was terminated from PEPCO, alleging that the events of August 30, 2003, caused him to develop PTSD. He sought temporary total disability benefits from November 3, 2003 to the present, and payment of medical expenses.

PEPCO contested the claim, arguing that petitioner did not sustain a psychological injury from work-related mental or emotional stress. The case first came before ALJ Amelia Govan on August 17, 2005. Petitioner and Mr. Dudley testified on behalf of petitioner and Mr. Johnson, Mr. Birratu, Mr. Hyde and Mr. Duarte testified on behalf of respondent. Contrary to petitioner's testimony, Mr. Dudley

testified that the atmosphere was jovial in the car on the way to the first testing facility. Mr. Johnson and Mr. Birratu both testified that they did not make any threatening movements towards petitioner, and that they did not poke fun at petitioner for urinating on himself. In a Compensation Order dated March 17, 2006, Judge Govan denied petitioner's request for workers' compensation benefits. The CRB upheld the ALJ's order.

In *Ramey v. District of Columbia Dep't of Employment Servs.*, 950 A.2d 33 (D.C. 2008) (*Ramey I*), we remanded the case for the CRB to reconsider its decision in light of our decision in *McCamey v. District of Columbia Dep't of Employment Servs.*, 947 A.2d 1191 (D.C.2008) (en banc), which had been decided after the CRB's initial decision in this case, but while the petition for review was pending before this court. In *McCamey*, we remanded the case so that the CRB could structure a test for determining employee entitlement to compensation for injuries that occurred during employment. Prior to this court's holding in *McCamey*, DOES utilized a so-called "objective test" or standard for determining entitlement to compensation in cases involving psychological harm caused by employment-related stress ("mental-mental" cases). *Id.* at 1201.

■ Under the objective standard, in order for the claimant to demonstrate psychological injury arising from work-related stress, he had to establish "that the actual working conditions *could have caused similar emotional injury in a person who was not significantly predisposed to such injury.*" *Ramey I*, 950 A.2d at 34 (emphasis in original). In ALJ Govan's March 17, 2006 Compensation Order, she concluded that petitioner was not entitled to benefits because the events of August 30, 2003, would not have caused emotional injury to a person not predisposed to such injury. *Id.* Because the application of this objective test ran contrary to our decision in *McCamey*, where we emphasized that "[t]he objective test … cannot be reconciled with the clear language of the [Workers' Compensation Act] … which provide[s] in straightforward language that the Act[ ] compensate[s] workers for injuries *they* suffer on the job," 947 A.2d at 1213 (emphasis in original), we reversed the CRB's affirmance of the ALJ's order and remanded the case back to the Board for reconsideration. 950 A.2d at 35.

On July 24, 2008, upon reconsideration, the Board adopted a new standard, to be applied to mental-mental claims in light of *McCamey*, described in detail below, and resubmitted the case to ALJ Govan to decide in accordance with the new standard. ALJ Govan applied the new standard to the facts of the case and on August 25, 2008, she issued a new compensation order, again denying petitioner's claim for workers' compensation. Petitioner submitted an application to the CRB for review of this order.

In his application for review of the ALJ's Compensation Order on Remand, petitioner argued that the ALJ "contradicted herself" when she found that petitioner was visibly intoxicated on the morning in question. He contended that if his faculties were impaired by drugs or alcohol, he would not have been able to understand what was going on and the ALJ found that he understood that he was being driven around in order to find a facility willing to conduct a drug and alcohol test. Petitioner also contested the ALJ's factual findings, reiterating his version of events, and stating, in a conclusory manner, that he suffered from PTSD after being falsely accused of being intoxicated at work and being humiliated by his employer and afraid for his well-being, on the morning in question.

In addition, petitioner attacked several of the ALJ's evidentiary decisions. He

also attacked the employer's witness, Dr. Schulman, accusing him of falsifying information contained in his report and then destroying evidence that would have impeached his credibility and the credibility of the report. Finally, he asserted that the ALJ exhibited "outrageous behavior" and should have recused herself because she also presided over petitioner's first hearing.

On review, the CRB noted that the ALJ did not rule in a contradictory manner because, although she found that petitioner was intoxicated on the morning in question, the ALJ also found that petitioner was capable of comprehending what was happening because he "was well aware of and understood Respondent's drug and Breathalyzer program." In addition, the CRB stated that although petitioner disputed the accuracy of the blood alcohol test, that point was not relevant to the issue of whether he suffered psychological injury arising from the events of August 30, 2003. Finally, the CRB held that petitioner's remaining contentions, including the accusations lodged against the ALJ, the employer's counsel, and Dr. Schulman, were without merit and that the ALJ, as fact-finder, made credibility determinations that were entitled to "great weight." The CRB ultimately upheld the ALJ's ruling denying petitioner workers' compensation benefits because he was unable to prove by a preponderance of the evidence that he sustained psychological harm arising from the events of August 30, 2003.

## II.

 We review an agency decision to determine whether its findings are supported by substantial evidence. *Jackson v. District of Columbia Dep't of Employment Servs.*, 955 A.2d 728, 731 (D.C.2008). Under the "substantial evidence test," we will affirm an agency decision when (1) the agency makes findings of fact on all material contested issues; (2) these findings rationally lead to conclusions of law that are legally sufficient, under the governing statute, to support the agency's decision; and (3) each finding is supported by evidence sufficient to convince reasonable minds of its adequacy. *Clark v. District of Columbia Dep't of Employment Servs.*, 743 A.2d 722, 726 (D.C.2000) (citing *Citizens Ass'n of Georgetown, Inc. v. District of Columbia Zoning Comm'n*, 402 A.2d 36, 42 (D.C.1979)). "The CRB reviews AHD decisions for legal sufficiency, affirming a compensation order that is based on substantial evidence and in accordance with the law." *Georgetown Univ. v. District of Columbia Dep't of Employment Servs.*, 985 A.2d 431, 433 (D.C.2009) (citing D.C.Code § 32–1521.01(d) (2004)). We will not overturn the CRB's decision unless it is not in accordance with the law. *Id.*

 In this court, petitioner argues for reversal of the CRB's order. He alleges, among other things, that the ALJ disregarded this court's holding in *McCamey* and our remand order in *Ramey I*, and thus, violated the law.[1]

1. Petitioner raises a number of additional contentions, only one of which warrants our brief attention. Petitioner argues that Judge Govan was biased against him after the first hearing held in August 2005, and that his case should have been assigned to a different judge on remand. The CRB rejected this argument summarily, finding that it lacked merit. We agree with the CRB. We first note that the record does not indicate that petitioner asked the ALJ to recuse herself on remand. Ordi-

narily a party must request that a judge recuse herself for bias in order to preserve the issue for appeal, however, because of the importance of maintaining "the public's confidence in the judicial process," *see Coulter v. Gerald Family Care, P.C.*, 964 A.2d 170, 180–81 (D.C.2009) (quotation marks and citation omitted), we proceed as though petitioner had preserved the claim but must ultimately reject it. Petitioner did not point to any instance that would suggest that Judge Govan was

The WCA "provides for the compensation of employees who suffer disabilities that are causally connected to workplace injuries." *McCamey*, 947 A.2d at 1196. In *McCamey*, we held that when an employee, who is predisposed to psychological injury, experienced a physical or psychological work-related event that triggers his or her pre-existing condition, that employee cannot be automatically disqualified from receiving benefits simply because the accident or event would not have affected a "hypothetical average or healthy person," thereby overturning the "objective test" previously applied. *Id.* at 1213–14.

■ Under the burden-shifting scheme adopted in *McCamey* for psychological harm related to physical injury suffered in the course of employment ("physical-mental" cases), as in the case of where the harm is physical, there is a presumption of compensability as long as the claimant can show that his physical work-related injury had the potential of resulting in or contributing to the psychological injury. *Id.* at 1213. Once the presumption is satisfied, the burden shifts to the employer to rebut that presumption by "bring[ing] forth 'substantial evidence' showing that the [ ] disability did not arise out of and in the course of employment." *Id.* at 1199. If the employer is able to rebut the presumption, the burden shifts back to the

employee to prove by a preponderance of the evidence that the physical injury caused or contributed to the psychological harm. *Id.* at 1244. Our decision in *McCamey* left open, however, the question of the appropriate test to be applied in mental-mental cases, deciding only the test for physical-mental cases. *Id.*

After our remand in *Ramey I*, the CRB adopted the standard used under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 *et seq.*, the predecessor to the WCA, for use in mental-mental cases. By adopting this standard, the Board discarded the "person of ordinary sensibilities," or objective, standard previously applied in mental-mental cases. Instead,

> an injured worker alleging a mental-mental claim invokes the statutory presumption of compensability by showing a psychological injury and actual workplace conditions or events which could have caused or aggravated the psychological injury. The injured worker's showing must be supported by competent medical evidence. The ALJ, in determining whether the injured worker invoked the presumption, must make findings that the workplace conditions or events existed or occurred, and must make findings on credibility. If the presumption is invoked, the burden shifts to

---

biased against him. The gravamen of his argument seems to be: (1) that the judge credited the employer's witnesses even though his witnesses presented evidence contradictory to that of those witnesses, and (2) that the judge made factual determinations that he disagreed with. Ordinarily this is not enough to show the appearance of bias on the part of the judge. *See In re McMillan*, 940 A.2d 1027, 1039–40 (D.C.2008) ("Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. To support a claim of bias of the [ ] judge, such bias must be personal in nature and have its source beyond the four corners of the courtroom." (Citation and internal quotation

marks omitted)). In addition, the fact that Judge Govan presided over petitioner's first hearing does not, in and of itself, require her recusal. *See Mayers v. Mayers*, 908 A.2d 1182, 1194 (D.C.2006) ("A judge may have personal experience with particular parties who have appeared before him in previous cases, or he may have learned about underlying events by presiding over related trials. Yet, such prior knowledge does not, by itself, generally raise questions about the fairness of a judge.") (citation and internal quotation marks omitted). To the contrary, except in unusual circumstances, concern for judicial efficiency favors assignment to the same judge on remand.

the employer to show, through substantial evidence, the psychological injury was not caused or aggravated by workplace conditions or events. If the employer succeeds, the statutory presumption drops out of the case entirely and the burden reverts to the injured worker to prove by a preponderance of the evidence that the workplace conditions or events caused or aggravated the psychological injury.

Thus, the Board essentially adopted the test announced by this court in *McCamey* for use in physical-mental cases, for application in mental-mental cases.

Although petitioner claims that the CRB did not follow this court's order to reconsider the case in light of *McCamey*, he does not take issue with the test articulated by the CRB for mental-mental claims. The record indicates that on remand the ALJ properly applied the burden-shifting scheme announced by the Board in its July 2008, Decision and Remand Order. In addition, her factual findings are supported by substantial record evidence, and her conclusions of law follow rationally from these findings. ALJ Govan credited the testimony of the employer's witnesses and not that of the petitioner, but because the petitioner provided reports from Dr. Carl Douhitt and social worker Radhika Joglekar indicating that the events of August 30, 2003, could have caused or aggravated petitioner's psychological injury, the ALJ had invoked a presumption of compensability.

The CRB then noted that "the ALJ found that Respondent had provided sufficient evidence to rebut the presumption, with witness testimony that petitioner was not visibly upset or shaken by the events that occurred on August 30, 2003." The employer was also able to rebut the presumption, the ALJ observed, with the medical opinion of Dr. Schulman that petitioner developed an adjustment disorder after he was placed on DML on September 30, and that he did not suffer from PTSD as a result of the events of August 30, 2003.

The burden then shifted back to petitioner to show by a preponderance of the evidence that the incident caused or contributed to his psychological injury. He was unable to do this, the ALJ found, because he returned to work shortly after the August 30, 2003 incident and "worked full time and overtime duty until he was placed on DML on September 30, 2003." At the August 17, 2005 hearing, petitioner himself admitted that he told Dr. Schulman that he was able to return to work on September 10, 2003, after the five-day crisis suspension. Gregory Johnson, petitioner's supervisor, testified that when petitioner returned to work after his suspension, he "acted normal" and conducted his duties without incident, "as he normally would." The ALJ ultimately found that petitioner's psychological problems, as Dr. Schulman opined, were likely related to his inability to accept and adjust to his drug and alcohol addiction—brought home by the DML suspension imposed at the end of September—and not, as petitioner claimed, to his working conditions on August 30, 2003.

The record supports the ALJ's factual findings and her legal conclusions reflect no error. In reaching her decision, she considered the entire record evidence and acknowledged petitioner's version of events, discussed the material factual disputes, and credited the version of events elucidated by the employer's witnesses. Namely, she found that petitioner

> was not forcibly restrained or coerced into going [to the testing facilities]; that he understood that he was being driven to find a facility which would administer a Breathalyzer test; that it was not dark

when he and the other PEPCO employees ... left the downtown office; that they were driving around trying to find a facility for no longer than five hours; that the atmosphere in the car was friendly and relaxed rather than oppressive, and that no one in the car or at the office ... was aware of claimant's urinating on himself.

These findings are consistent with the testimony of all of the witnesses except for petitioner himself. Mr. Dudley testified that he was with petitioner the entire time that the men were attempting to find a testing facility, that everyone in the car was levelheaded, that they were all "joking around" and that "everything went okay." When asked if he observed anyone mistreat petitioner, Mr. Dudley replied that he did not. Mr. Johnson testified that he did not observe Mr. Duarte make any threatening statements or movements toward petitioner before the men left to find a testing facility, that petitioner was informed that he was being taken for a drug and alcohol test, and that he did not notice that petitioner had urinated on himself. Likewise, Mr. Birratu testified that he did not observe Ramey urinate on himself and that he did not make fun of him for doing so. Mr. Birratu also testified that nothing happened during the trip to the testing facilities that was life-threatening and that petitioner never complained of being in fear. The ALJ's findings support her conclusion that petitioner did not sustain a compensable psychological injury on the morning of August 30, 2003, in spite of the presumption, which initially operated in his favor this time around.

Because the ALJ's findings are supported by substantial evidence in the record and lead rationally to her legal conclusions, the CRB's Order is in accordance with the law. For the foregoing reasons, the Decision and Order of the CRB is

*Affirmed.*