*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-AA-0917

DAVID YOUNG, PETITIONER

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

INSTITUTE FOR PUBLIC-PRIVATE PARTNERSHIP, *et al.*, INTERVENORS.

Petition for Review of a Decision
of the Compensation Review Board
(CRB-074-12)

(Submitted October 31, 2013                    Decided November 7, 2013)

*Benjamin T. Boscolo* was on the brief for petitioner.

*Irvin B. Nathan*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, *Donna M. Murasky*, Deputy Solicitor General, and *Michael Milwee*, Senior Assistant Attorney General, were on the statement in lieu of brief for respondent.

*Roger S. Mackey* was on the brief for intervenors.

Before GLICKMAN and EASTERLY, *Associate Judges*, and FARRELL, *Senior Judge*.

EASTERLY, *Associate Judge*:  David Young petitions for review of an order by Respondent District of Columbia Department of Employment Services (DOES) Compensation Review Board (CRB) affirming the final compensation order issued by DOES Administrative Law Judge Jeffrey P. Russell (ALJ).  Mr. Young asserts the CRB erred, first in directing the ALJ to calculate his average weekly wage (AWW) so as to disregard the amount his employer was contractually obligated to pay him in the form of a housing allowance, and then, after remand, in upholding the ALJ's AWW calculation based on the CRB's directive.[1]  We agree and hold that Mr. Young's AWW must be calculated based on his annual salary and the $1,200 a month housing allowance provided in his one-year employment contract.

## I.  Facts

In March 2006, Mr. Young was working for Intervenor Institute for Public-Private Partnership (IP3) as the regional representative for the Middle East and Northern Africa.  He was soon to be permanently relocated to Jordan, but on March 26, 2006, he was seriously injured in a car accident while traveling on

---

[1]  Mr. Young argues in the alternative that the CRB erred in upholding the ALJ's calculation of his AWW because he should have been credited with a weekly housing allowance based on five weeks of hotel stays paid for by IP3.  We reject this argument.  See *infra* note 10.

business in Malawi. Mr. Young suffered a spinal cord injury, leaving him without the use of both his legs and only limited use of his arms.

Mr. Young filed a worker's compensation claim and the DOES ALJ found that he was permanently and totally disabled as of the date of the accident. That ruling was not challenged by IP3.[2] A dispute arose, however, regarding the calculation of Mr. Young's AWW, which would serve as the basis for his compensation.[3]

Mr. Young had been promoted to the position of regional representative at the beginning of January 2006, a few months prior to his accident.[4] At that time, he was awarded a corresponding pay raise, giving him an annual salary of $48,000. In addition, his 12-month employment contract gave him a housing allowance of up to $1,200 per month. In anticipation of his move to Jordan, Mr. Young found

---

[2] IP3 appeared before the ALJ and the CRB with its insurer, Travelers Indemnity Co. of America (Travelers), and IP3 and Travelers filed a joint brief before this court. For ease of reference, we refer to both Intervenors as IP3 throughout this opinion.

[3] "In case of total disability adjudged to be permanent, 66 2/3% of the employee's average weekly wages shall be paid to the employee during the continuance thereof." D.C. Code § 32-1508 (1) (2012 Repl.).

[4] The orders issued by the ALJ and CRB inconsistently identify the date of Mr. Young's promotion as January 1 or January 2, 2006 and the hearing transcript confirms only that there was some confusion about which date was correct.

an apartment there to rent for the amount of his housing allowance. IP3 signed a one-year lease on his behalf that was set to begin on April 15, 2006. In the five weeks before the date of the accident, between February 18 and March 25, 2006, IP3 put Mr. Young up at hotels in Malawi, Zambia, Egypt and Jordan.[5]

Before the ALJ, the following question arose: should a housing allowance written into Mr. Young's employment contract constitute a figure to be included within the AWW calculation where the lease IP3 signed on Mr. Young's behalf pursuant to his contract had not yet begun, and IP3 had not yet made any rent payments?[6] The ALJ's first compensation order, dated September 9, 2010, determined that because IP3 had agreed to pay $1,200 per month for housing, and had in fact already paid for Mr. Young's lodging in hotels while in Africa and the Middle East, his wage calculation properly included the value of the lease in Jordan. This amount, combined with his $48,000 annual salary, resulted in an AWW of $1,200. IP3 sought review of this order before the CRB, arguing that the

---

[5] Mr. Young testified that before that time he had been in the District of Columbia.

[6] The parties also litigated before the ALJ whether Mr. Young's AWW should be based entirely on his post-promotion wages and whether he became permanently disabled on the date of the accident. The ALJ determined that Mr. Young had been permanently and totally disabled since March 26, 2006, and that his weekly wage should be based on the promotion wage of $48,000 per year. Neither of these rulings is challenged before this court.

ALJ should not have included the monthly rent obligation for the leased apartment as part of the AWW.

The CRB determined that "the ALJ correctly included in the claimant's average weekly wage an amount for lodging but that the ALJ erred in using the annual equivalent of the cost of the apartment divided by 52." Because the lease did not begin until after the accident, the CRB determined that the ALJ erred in using that lease value. The CRB remanded for recalculation of weekly lodging, stating that "[t]he ALJ, consistent with D.C. Code § 32-1511 (a)(3), properly divided the employer's annual salary divided by 52 but only should have added the actual cost of the hotels paid for by the employer prior to the accident in calculating the average weekly wage."

On remand, the parties agreed that over 36 days (or 5.14 weeks) prior to the accident, the employer paid $4,869.02 in hotel lodging. Mr. Young argued that the hotel lodging figure should be divided by the number of weeks that the lodging was provided (5.14) and then that figure ($947.28) should be added to his weekly salary (derived from his annual salary of $48,000), resulting in an AWW of $1,870.35. IP3 argued that the base salary figure should be halved and that the entire hotel lodging figure should be added to that number, then divided by 26, to

reach an AWW of $1,110.34. The ALJ determined that neither approach was in accordance with the CRB directive, and went on to calculate the AWW simply by adding the lump sum paid for hotels ($4,869.02) to Mr. Young's annual salary ($48,000) and then dividing that sum by 52 weeks, to yield an AWW of $1,016.71.

Mr. Young sought review of this order from the CRB. Arguing that the ALJ's AWW calculation yielded an inequitable, distorted result, he proposed instead that the CRB should either endorse the ALJ's initial AWW calculation of $1,200 (based on his annual salary of $48,000 and monthly housing allowance of $1,200), or it should endorse his calculation of $1,870.36 (based on his annual salary and his calculation of his weekly hotel allowance). The CRB issued a decision and order upholding the ALJ's calculation on remand.

## II. Standard of Review

"[O]ur review in a workers' compensation case is of the decision of the CRB, not that of the ALJ." *Reyes v. District of Columbia Dep't of Emp't Servs.*, 48 A.3d 159, 164 (D.C. 2012) (citing *Georgetown Univ. Hosp. v. District of Columbia Dep't of Emp't Servs.*, 916 A.2d 149, 151 (D.C. 2007)). This review is

generally "limited to determining whether the decision is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id.* (quoting *Asylum Co. v. District of Columbia Dep't of Emp't Servs.*, 10 A.3d 619, 624 (D.C. 2010)). However, "recognizing that this court is the final authority on issues of statutory construction," "we review the CRB's legal rulings *de novo.*" *Fluellyn v. District of Columbia Dep't of Emp't Servs.*, 54 A.3d 1156, 1160 (D.C. 2012) (internal citations and quotation marks omitted). We recognize agency expertise and will "accord great weight to any reasonable construction of a statute by the agency charged with its administration." *Id*. (quoting *Mills v. District of Columbia Dep't of Emp't Servs.*, 838 A.2d 325, 329 (D.C. 2003) (internal quotation marks omitted)). But "we will not affirm an administrative determination that reflects a misconception of the relevant law or a faulty application of the law." *District of Columbia Appleseed Ctr. for Law & Justice, Inc. v. District of Columbia Dep't of Ins., Sec. & Banking*, 54 A.3d 1188, 1211 (D.C. 2012) (citation, internal quotation marks and brackets omitted).

### III. Analysis

The District of Columbia Workers' Compensation Act (WCA), D.C. Code §§ 32-1501-1545 (2012 Repl.), provides for the compensation of employees injured in the course of their employment. The foundation for calculating the amount of compensation due is an employee's "wages," which are statutorily defined as "the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the injury, including the reasonable value of . . . housing, . . . received from the employer." D.C. Code § 32-1501 (19) (2012 Repl.). From an injured employee's wages, an AWW is calculated. Sections (a)(3) & (b) of D.C. Code § 32-1511 (2012 Repl.) provide that:

> (a) . . . (3) If at the time of the injury the wages are fixed by the year, the average weekly wage shall be the yearly wage so fixed divided by 52; [7]
>
> . . .
>
> (b) The terms "average weekly wage" and "total wages" as used in this section shall include reasonable value for board and lodging received from the employer plus gratuities declared for tax purposes by the employee.

---

[7] D.C. Code § 32-1511 (a) provides different formulas depending on the compensation system between the employer and employee at the time of the accident. The CRB and ALJ applied § 32-1511 (a)(3) at all stages of the litigation, which sets out the calculation method for an employee whose salary is fixed by the year. Earlier in this litigation, IP3 argued for application of a different subsection but, on appeal, the parties are in agreement that (a)(3) is the appropriate subsection to apply.

D.C. Code § 32-1511 (2012 Repl.).

The question presented by this case is what does "reasonable value for board and lodging *received* from the employer," under § 32-1511 (b) (emphasis added), mean. The CRB determined "received" meant prior payment to an employee. For the reasons discussed below, we conclude that the CRB's reading of D.C. Code § 32-1511 was unduly constrained and was not a reasonable interpretation of this provision.

We begin by considering the plain meaning of the language in § 32-1511. *See Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) ("The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used." (quoting *Varela v. Hi-Lo Powered Stirrups, Inc.*, 424 A.2d 61, 64 (D.C. 1980) (en banc) (internal quotation marks omitted))).

The primary, ordinary meanings of "receive" are "to take possession or delivery of" and "to knowingly accept." *Webster's Third New International Dictionary, Unabridged* 1894 (2002); *see also American Heritage Dictionary, Third Edition* 1508 ("To take or acquire (something given, offered, or transmitted);

get.") (1992). At the time of the accident, Mr. Young had been offered and had accepted a 12 month contract, under the terms of which he was granted both the salary he was being paid and the housing allowance pursuant to which he had acquired an apartment. But while he was getting paid at the promotion rate on the date of the accident, he had not yet taken up residence in the apartment IP3 had rented for him and IP3 had not yet paid the first installment of rent. Thus, the ordinary meaning of receive makes colorable both the CRB's and Mr. Young's interpretations and does not guide us toward either.

We must read § 32-1511 (b) in light of the broader statute, however. Indeed, "[s]tatutory interpretation . . . is 'a holistic endeavor in which we must consider not only the bare meaning of words but also their placement and purpose in the statutory scheme.'" *In re D.F.*, 70 A.3d 240, 243 (D.C. 2013) (quoting *Appleseed*, 54 A.3d at 1213 (brackets and ellipses omitted)). Thus, we read the term "received" "in light of the statute taken as a whole, with the goal of interpreting the statute as a harmonious whole." *Id.* (quoting *Appleseed*, 54 A.3d at 1213 (internal quotation marks omitted)). When read in this manner, the CRB's interpretation of § 32-1511 (b) is unreasonable.

We are guided in particular by D.C. Code § 32-1501 (19) (defining wages) and § 32-1511 (a)(3) (establishing the proper computation of wages fixed by the year). Both provisions are focused on the rate of recompense — not on the monetary amount actually paid out to the employee. Reading § 32-1511 (b) together with these provisions leads us to conclude that the value of housing "received" as wages within the meaning of § 32-1511 (b) is likewise calculated by examining the rate of recompense to which the employee was entitled at the time of the injury — i.e., the dollar value of housing committed to an employee under his employment contract — not by the dollar amount of the housing actually enjoyed or paid for.[8]

This interpretation is further supported by our obligation to "liberally construe[] [the WCA] to achieve [its] humanitarian purpose," and to eschew

---

[8] To argue that the statute is backward-looking and concerned only with the cost of housing actually paid for, IP3 relies on *Asylum Co. v. District of Columbia Dep't of Emp't Servs.*, 10 A.3d 619 (D.C. 2010). However, *Asylum* was interpreting D.C. Code § 32-1511 (a)(4) (addressing the calculation of the AWW when "wages are fixed by the day, hour, or by the output of the employee"), not D.C. Code § 32-1511 (a)(3). D.C. Code § 32-1511 (a)(4) provides that "the average weekly wage shall be computed by dividing by 26 the total wages the employee earned in the employ of the employer in the 26 consecutive calendar weeks *immediately preceding the injury*." By contrast, subsection (a)(3) does not include this language and thus does not require a retrospective assessment of income actually earned in the weeks immediately preceding an injury.

"rigorous literalism" when it "would surely lead to incongruous or absurd results." *United Parcel Service v. District of Columbia Dep't of Emp't Servs.*, 834 A.2d 868, 872-73 (D.C. 2003) (internal citations and quotation marks omitted). Ultimately, our goal is to ensure that "[w]orkers' compensation is . . . so calculated as to produce an honest approximation of claimant's probable future earning capacity." *Id.* at 872 (quoting 5 Arthur Larson, *Larson's Workers' Compensation Law* § 93.01 [1][e], at 93-11 (2003) (internal quotation marks omitted)).

Here, "an honest approximation of [Mr. Young's] probable future earning capacity," *id.*, included both his $48,000 in salary and his $1,200 housing allowance under his 12-month employment contract. There was nothing in the contract that indicated that the payment of a housing allowance was only an anticipated future benefit. As the contract reads, the housing allowance, like the salary increase, became an active commitment on the date the contract was signed. Thus, the CRB's focus on the date on which the lease began was misplaced. IP3's obligation to pay Mr. Young a housing allowance both was independent of the lease agreement and predated that separate agreement.[9]

---

[9] IP3 well understood that this housing allowance was an inducement for Mr. Young to take the job. Thomas White, one of the founders of IP3, acknowledged at the hearing that the company "recognized that as part of employing individuals in the Middle East that one of the benefits the employees

(continued…)

Furthermore, the CRB's determination that only the actual cost of Mr. Young's hotel stays over approximately 5 weeks should be used in calculating lodging was in error because this focus distorted and undervalued Mr. Young's earning capacity. These hotel expenses were not provided for in the detailed contract. And they are in total far less than the $14,400 ($1,200 x 12) due to Mr. Young under his contract.[10]

More generally, looking only to the amount of lodging actually paid to calculate a claimant's AWW would "lead to incongruous or absurd results," *United Parcel Service*, 834 A.2d at 872, because it would make the calculation of AWW

---

(…continued)
got was that the company provided them with lodging . . . [and] [t]hat they didn't have to pay for it out of their take-home pay." Moreover, it is not lost on us that IP3 benefitted from the fact that Mr. Young would be living overseas while working for the company and thus could pay Mr. Young as little as $48,000 because Mr. Young would not be taxed on that income and would have more take home pay. Under these circumstances, it seems all the more appropriate to require IP3 to honor its contractual commitment to pay Mr. Young a housing allowance and to factor that amount into Mr. Young's AWW.

[10] For this reason, Mr. Young's alternative argument that he was entitled to a $947.28 weekly housing allowance based on his hotel stays and that that figure should have been used in the calculation of his AWW likewise fails. IP3 did not contract to pay Mr. Young for hotel stays, and the figure he reached in calculating an annual allowance for such expenses, $49,258.56, is well in excess of the total housing allowance to which IP3 contractually committed for the year.

entirely dependent on the timing of the employer's payment rather the force of the employer's commitment. Here, for example, IP3 had signed the lease on Mr. Young's behalf and had committed to pay the landlord in two, six month installments — one at the beginning of the lease and one in the middle. Thus, under the interpretation of D.C. Code § 32-1511 (b) endorsed by the ALJ and the CRB, had Mr. Young been injured the day after his lease began, he could have factored half of his annual rent payments ($7,200) into his AWW calculations, and had he been injured six months and a day after his lease began, he could have factored in his total housing allowance for the year ($14,400) because, by that point, his rent would have been paid in full. Or, had the employer defaulted on its commitment and never paid Mr. Young's rent, he would have had only his salary as the basis from which to calculate his AWW. But this manner of calculation is entirely arbitrary and unfair where, in all these scenarios (as in the facts at bar), Mr. Young had a binding commitment from IP3 to pay for his housing for the full year.

For all these reasons, we hold that, where an employee is being compensated via a contract fixed by the year, that provides both for an annual salary and a monthly housing allowance, his AWW must be calculated based on the terms of wages — both salary and housing — committed to in the contract. The result is

that, in this case, Mr. Young's AWW must be properly calculated as $48,000 in salary added to $14,400 in lodging divided by 52 weeks, for a total of $1,200. We reverse and remand to the CRB to direct the ALJ to calculate Mr. Young's AWW consistent with this opinion.

*So ordered.*