Joseph MURRAY, Petitioner,

v.

**DISTRICT OF COLUMBIA DEPART-MENT OF EMPLOYMENT SER-VICES, Respondent,**

and

**Paul Brothers Oldsmobile, Safeco Insurance Companies, Intervenors.**

No. 97–AA–1720.

District of Columbia Court of Appeals.

Argued May 19, 1999.

Decided Jan. 18, 2001.

Dorsey Evans, Silver Spring, MD, for petitioner.

Jo Anne Robinson, Principal Deputy Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief, for respondent.

Michael D. Dobbs, Spokane, WA, and Ann Wittik–Bravmann for intervenors.

Before WAGNER, Chief Judge, RUIZ, Associate Judge, and PRYOR, Senior Judge.

WAGNER, Chief Judge:

Petitioner, Joseph Murray, seeks review of a decision of the Director of the Department of Employment Services (DOES) denying his claim for compensation under the District of Columbia Workers' Compensa-

tion Act, D.C.Code §§ 36–301 to 345. DOES determined that Murray failed to establish by credible evidence that he sustained an injury arising out of his employment with his employer, intervenor Paul Brothers Oldsmobile. Murray argues for reversal and remand of the case to the agency on the grounds that: (1) the hearing examiner failed to accord him the benefit of the statutory presumption of compensability; (2) the hearing examiner's finding, which the Director adopted, that Murray did not sustain a work-related injury is not supported by the evidence; and (3) the finding that Murray misrepresented his medical condition on his employment application is not supported by substantial evidence and is irrelevant to a determination of the issues. We conclude that the agency improperly denied him the benefit of the statutory presumption of compensability and that its finding that he did not sustain a work-related injury is not supported by the evidence. We further conclude that the misrepresentation issue is not ripe for review. Therefore, we reverse and remand for further proceedings consistent with this opinion.

## I.

Murray's claim arose out of events which occurred on September 25, 1992. At that time, he was employed as a body-shop craftsman with intervenor, Paul Brothers Oldsmobile. While working that afternoon, Murray asked Robert Silva, another employee, to help him move a disabled Oldsmobile into the body shop. Murray attached a chain to the back of his Suburban Chevrolet and connected it to the front of the disabled vehicle, which Silva was going to steer, and positioned the vehicles to go up a ramp. However, while going up the ramp, the chain connecting the vehicles became loose, and Murray got down on the ground and tried to re-attach the chain. According to Murray's testimony, it was raining hard, and at some point, he slipped and fell on a piece of plastic, sliding some six or seven feet

into the railing. Murray said that he slipped on his buttocks, and he pointed to the right hip area when indicating where the ramp hit his body. He testified that he thought he told Silva that he had fallen. Murray testified that he also told someone named Lucas inside the shop, and stated that he needed to see a doctor. Lucas told Murray that he had to see a manager, Mr. Germane. After reporting the incident to various company officials, Murray received his check and went home early that night. He testified that he had to crawl from his vehicle and that his wife took him to Washington Adventist Hospital.

Silva's testimony was essentially the same concerning how he and Murray went about trying to move the Oldsmobile that day. Silva testified that he remained behind the wheel of the Oldsmobile while Murray was trying to hook the chains. He said that the windows were down, and the hood was up on the Oldsmobile, blocking his view in front of the car. Silva said that Murray came up to the window and told him that he had fallen. He testified that he did not see Murray fall or hear him cry out; however, he said that Murray was out of his sight for about ten minutes before he reported the fall. Silva asked Murray if he was "okay," and Murray said that he was fine. Silva placed the time at about 2:00 p.m., and he said that Murray finished working the shift, which ended about 4:15 p.m.

Murray sought temporary total disability benefits, related medical expenses and authorization for treatment. He had not returned to work at the time of the hearing. The hearing examiner identified four issues for consideration: (1) whether Murray sustained an accidental injury on September 25, 1992 arising out of and in the course of his employment; (2) whether he misrepresented his physical condition on his employment application; (3) the nature and extent of Murray's disability, if any; and (4) whether Murray voluntarily limited his income. The hearing examiner found that Murray had not presented substantial

evidence that he sustained an accidental injury arising out of and in the course of his employment on the date claimed. Having determined the first issue against Murray, the hearing examiner made no conclusions of law on the remaining issues, stating that the issues were "rendered moot by the fact of the injury not being established." Murray appealed the hearing examiner's decision to the Director of the agency. Upon review of the record, the Director concluded that the hearing examiner's findings are supported by substantial evidence in the record and that the legal conclusions are in accordance with the law. Therefore, the Director adopted, affirmed and incorporated by reference the hearing examiner's decision. Murray petitioned for review in this court.

## II.

■ This court's review of the agency's decision is limited "to determining whether the Director's order is in accordance with law and supported by substantial evidence in the record." *King v. District of Columbia Dep't of Employment Servs.*, 560 A.2d 1067, 1072 (D.C.1989) (citing *Dell v. District of Columbia Dep't of Employment Servs.*, 499 A.2d 102, 106–07 (D.C.1985)); *see* D.C.Code § 1–1510(a)(3)(A), (E), made applicable by D.C.Code § 36–322(b)(3). Substantial evidence is more than a scintilla; it "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *King*, 560 A.2d at 1072 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Against this standard, we must resolve Murray's claim that the agency's decision is not supported by substantial evidence in the record.

■ Murray argues first that the agency failed to accord him the benefit of the statutory presumption of compensability. In the District of Columbia, there is a statutory presumption that a claim for injuries suffered by a worker on the job comes within the provisions of the Act, absent evidence to the contrary. *Ferreira v. District of Columbia Dep't of Employment Servs.*, 531 A.2d 651, 655 (D.C.1987) (citing D.C.Code § 36–321(1)). The presumption then operates to establish a causal connection between the disability and work-related event. *Id.* (citing *Swinton v. J. Frank Kelly, Inc.*, 180 U.S.App.D.C. 216, 223, 554 F.2d 1075, 1082, *cert. denied,* 429 U.S. 820, 97 S.Ct. 67, 50 L.Ed.2d 81 (1976)). To trigger the presumption, the claimant must provide some evidence of "a death or disability and a work-related event, activity, or requirement which has the *potential* of resulting in or contributing to the death or disability." *Id.* (citation omitted). If such evidence is produced, the burden shifts to the employer to produce "substantial evidence showing that the death or disability did not arise out of and in the course of employment." *Id.* (citations omitted) (internal quotations omitted).

In this case, Murray produced some evidence in support of the two basic factors required to trigger the presumption. This evidence consisted of his own testimony concerning his fall on the job while engaged in the performance of work for his employer, corroborated to some extent by his co-worker to whom he reported the incident immediately, and his medical records of his treatment that day and subsequently. The hearing examiner acknowledged that there is a presumption of compensability, but declined to give Murray the benefit of it "because his incredible testimony of an injury, harm, or a work related activity with the potential of causing an injury or harm [is] not enough [to] invoke the presumption of compensability." In other words, the hearing examiner found that Murray had not presented any *credible* evidence that he sustained an accidental injury on the day in question arising out of and in the course of his employment.

■ Generally, credibility determinations of the factfinder are entitled to great weight. *Dell v. Dep't of Employment Servs.*, 499 A.2d 102, 106 (D.C.1985) (citing

*In re Dwyer*, 399 A.2d 1, 12 (D.C.1979)). This court may not substitute itself for the trier of fact who heard, received and weighed the evidence. *King, supra*, 560 A.2d at 1072 (citing *Porter v. District of Columbia Dep't of Employment Servs.*, 518 A.2d 1020, 1022 (D.C.1986)). In this case, however, the hearing examiner's credibility determinations against Murray are based, at least in part, upon clearly erroneous factual determinations. Specifically, the hearing examiner found that Murray's testimony concerning the alleged accident was contradicted by Silva in that: (1) Silva did not mention that it was raining; (2) Murray's testimony was inconsistent with Silva's concerning which hip he said he fell on; and (3) Silva did not see the fall nor the plastic, and inferentially, therefore, Murray did not fall on any plastic. In fact, Silva's testimony was consistent with Murray's on the rainy weather conditions; [1] therefore, there was no inconsistency or discrepancy bearing upon Murray's credibility in this regard. Similarly, there was no clear inconsistency in Murray's testimony concerning the part of his body on which he fell. Silva could not testify with certainty as to which side Murray said that he had fallen on. Silva testified, "I think he was pointing to, let's see. The left side. I think it was the left side." Silva simply was not sure. During testimony, Murray pointed out his right hip as the area he injured.[2] Finally, the hearing

examiner's determination that Murray did not fall because Silva did not see the fall presupposes that Silva was in a position to see the occurrence. There is no indication that Silva was in a position to see Murray's fall or the plastic on the ground. Silva testified that he was in the car at the time with his view obstructed by the raised hood on the vehicle. Silva also testified that Murray was out of his sight for some ten minutes before Murray informed him that he had fallen. Thus, Silva had no personal knowledge of whether Murray did or did not fall. Silva's lack of knowledge of this aspect of the occurrence under these circumstances has no relevance for refuting the testimony of someone like Murray who has personal knowledge of the events. *See Hummer v. Levin*, 673 A.2d 631, 639 (D.C.1996) (citation omitted). " 'The rights of persons ... ought not to rest, and the law will not permit them to depend, upon the uncertain testimony of a witness who says he did not [see],' when he was in no position to see." *Id.* (quoting *Leisure Prods., Inc. v. Clifton*, 44 N.C.App. 233, 260 S.E.2d 803, 807 (1979)). Therefore, contrary to the hearing examiner's determination, Silva's testimony that he did not see the fall provided no basis upon which to refute Murray's evidence that he fell on the ramp that night.

■ The hearing examiner provided other grounds for concluding that Murray was not injured in a work-related accident

---

1. Silva's testimony on the point was as follows:
   A. ... That day it was drizzling.
   Q. Drizzling?
   A. Yes. Raining like day.

2. In assessing credibility, the hearing examiner also cited purported inconsistencies in Murray's testimony about what side of his body he injured. However, it is not readily apparent from the record. The portion of the testimony which is the subject of this credibility determination, in pertinent part, is as follows:
   Q. What part of your body hit the railing?
   A. The part of my body, I slipped down on my buttock part, right here.
   Q. You are indicating your left side from your back down to your upper thigh?

   A. Yes. ... I held on with my left hand as best I could.
   Q. You are referring to your left side?
   A. This side here.
   Q. Which side of your body are you pointing to?
   A. Right here.
   Examiner: I can see that, but he wants you to say it for the record.
   The Witness: My right side, because the ramp went up and caught me on this side.
   Examiner: The Claimant is indicating his right hip.
   Apparently, there was some demonstration which the examiner noted for the record was on the right side.

and denying him the benefit of the presumption of compensability. He rested his determination, in part, upon Murray's demeanor at the hearing. A witness' demeanor is an appropriate consideration in assessing the credibility of a witness. Generally, credibility determinations based upon the demeanor of the witness are given special weight. *Dell, supra,* 499 A.2d at 106 (citations omitted). However, given that the hearing examiner's overall credibility determination included, in addition to demeanor assessment, facts not supported by the record, it is not clear that the examiner would have reached the same result had he not labored under misconceptions about the evidence. Therefore, the agency should be required to consider whether Murray met the threshold requirement for triggering the presumption of compensability without allowing improper factors to influence its decision.[3]

Murray provided medical evidence of his work-related injury associated with the present claim. The hearing examiner offered no explanation for rejecting the evidence of Murray's treating physicians concerning the nature and cause of his disabling condition. It simply accepted the evidence of the intervenors' physicians. We have said repeatedly that some explanation must be offered for rejecting the findings of a treating physician for the worker who claims a work-related injury. *Canlas v. District of Columbia Dep't of Employment Servs.,* 723 A.2d 1210 (D.C. 1999). On remand, the agency should provide such explanation. Moreover, the hearing examiner did not "consider alternative work-related causes of petitioner's disability after rejecting [petitioner's] contention that a specific [accident] occurred" on September 25, 1992. *See Ferreira, supra,* 531 A.2d at 657. The hearing examiner found that Murray's duties required twisting, bending, reaching and pulling as well as using his hand and lifting objects which weighed in excess of 10 lbs. These tasks might have caused or contributed to his disability.

The Act must be construed liberally for the benefit of employees and their dependents. *Ferreira, supra,* 531 A.2d at 655 (citations omitted). To benefit from the presumption of compensability and shift the burden to the employer to provide substantial evidence that the disability did not arise in the course of employment, the claimant only needs to make an initial demonstration of an employment connected disability. Intervenors argue that even assuming that the presumption should have been applied, they rebutted the presumption. Again, they rely upon Silva's testimony that he did not see the fall and did not hear anything to indicate that Murray was falling. For the reasons previously stated, Silva's testimony was not specific and comprehensive enough to rebut the presumption that Murray fell at work and injured himself as he claims he did.

### III.

Murray argues that this court should reverse the hearing examiner's determination that he made misrepresentations on his employment application. This request is premature. In light of the agency's determination that the accident did not arise out of and in the course of Murray's employment, it declined explicitly to reach this issue. Therefore, we agree with the intervenors that upon remand, the agency may address the issues it did not reach previously.

For the foregoing reasons the decision appealed from hereby is reversed and remanded to the agency for further proceedings consistent with this opinion.

*Reversed and remanded.*

---

**3.** The hearing examiner also found inconsistencies in Murray's testimony concerning the nature and extent of his prior injuries. On remand, the agency may factor such inconsistencies into its credibility assessment absent the improper considerations it used previously.