GEORGETOWN UNIVERSITY
HOSPITAL, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent,

Jeannise Proctor, Intervenor.

No. 05–AA–783.

District of Columbia Court of Appeals.

Argued Jan. 5, 2007.

Decided Jan. 25, 2007.

---

William S. Sands, Jr., Fairfax, VA, with whom William S. Hopkins, was on the brief, for petitioner.

Robert J. Spagnoletti, Attorney General for the District of Columbia at the time the statement was filed, Todd S. Kim, Solicitor General, and Edward E. Schwab, Deputy Solicitor General, filed a statement in lieu of brief for respondent.

Matthew J. Peffer, for intervenor.

Before KRAMER, FISHER, and THOMPSON, Associate Judges.

FISHER, Associate Judge:

The Compensation Review Board affirmed an award of workers' compensation benefits to Jeannise Proctor, and her employer has petitioned for review of that decision. Finding the underlying compensation order to lack sufficient clarity, we remand for further proceedings.

## I. Factual Background

Ms. Proctor worked for Georgetown University Hospital, operating a food stand where she sold coffee, sodas, and snacks to visitors and employees. On May 29, 2001, Ms. Proctor was refilling a refrigerated display case with sodas, using a cart to hold the door open. When she finished restocking the case, Ms. Proctor moved the cart, and she claimed that the door struck both of her knees when it swung shut. The Hospital voluntarily paid temporary total disability benefits from May 26, 2001, through February 18, 2002, and also paid for arthroscopic surgery on her left knee. However, when Ms. Proctor sought an extension of temporary total disability benefits and authorization for treatment to her right knee, the Hospital declined to pay, asserting that her right knee had not been injured during the work-related incident. After conducting an evidentiary hearing, an administrative law judge concluded that Ms. Proctor remained temporarily and totally disabled from February 18, 2002, through March 31, 2002, and authorized additional medical treatment, including a prescribed arthroscopy to the right knee.

Ms. Proctor's knees had been injured before. For example, on March 4, 2001, she sought treatment at Providence Hospital, complaining of pain and swelling in her right knee. Her knee was x-rayed and aspirated, and the ALJ found that "30 ml of clear synovial fluid with small particles of cartilage were removed from [Ms. Proctor's] right knee."

At the administrative hearing, Ms. Proctor testified and offered the medical reports of her treating physician, Dr. Klimkiewicz, who interpreted the MRI of her right knee as showing "a complex tear over the posterior horn of the medial meniscus." Georgetown offered the testimony of Ms. Proctor's supervisors and its own medical expert, Dr. Gordon, who opined that Ms. Proctor's meniscus could not have been torn, nor could the injury have been aggravated, by the incident on May 29, 2001. It also produced the refrigerated display case, seeking to demonstrate that the closing door could not possibly have hit both of Ms. Proctor's knees as she alleged.

The ALJ found, and all parties agree, that the presumption of compensability, D.C.Code § 32–1521(1) (2001), was properly triggered and rebutted, and therefore dropped from the case. Weighing the evidence without applying a presumption, the

ALJ concluded that "the incident which occurred on May 29, 2001, resulted in the torn meniscus of the right knee as [Ms. Proctor] alleges." The Compensation Review Board ("the Board") affirmed the compensation order, concluding that it was "supported by substantial evidence in the record and is in accordance with the law."

## II. Standard of Review

■■■ This court's review of agency decisions in workers' compensation cases is governed by the District of Columbia Administrative Procedure Act. D.C.Code §§ 2–501 *et seq.* (2001). *See* D.C.Code § 32–1522(b)(3) (2001). In conducting our review, "[w]e must determine first, whether the agency has made a finding of fact on each material contested issue of fact; second, whether the agency's findings are supported by substantial evidence on the record as a whole; and third, whether the [Board's] conclusions flow rationally from those findings and comport with the applicable law." *Mills v. District of Columbia Dep't of Employment Servs.*, 838 A.2d 325, 328 (D.C.2003) (citing *Ferreira v. District of Columbia Dep't of Employment Servs.*, 667 A.2d 310, 312 (D.C.1995)). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Children's Defense Fund v. District of Columbia Dep't of Employment Servs.*, 726 A.2d 1242, 1247 (D.C.1999).

■■ Although our review of agency decisions is deferential, it is by no means "toothless." Our principal function "in reviewing administrative action is to assure that the agency has given full and reasoned consideration to all material facts and issues." *Dietrich v. District of Columbia Bd. of Zoning Adjustment*, 293 A.2d 470, 473 (D.C.1972); *accord, Gay v. Dep't of Employment Servs.*, 644 A.2d 1326, 1328 (D.C.1994). "The court can only perform this function when the agency discloses the basis of its order by an articulation with reasonable clarity of its reasons for the decision." *Dietrich,* 293 A.2d at 473; *accord, Felicity's, Inc. v. District of Columbia Bd. of Appeals & Review,* 851 A.2d 497, 502 (D.C.2004); *Branson v. District of Columbia Dep't of Employment Servs.,* 801 A.2d 975, 979 (D.C.2002).

## III. Discussion

■■ In a workers' compensation case, we review the decision of the Board, not that of the ALJ. *Providence Hosp. v. District of Columbia Dep't of Employment Servs.*, 855 A.2d 1108, 1111 (D.C.2004). In doing so, however, we cannot ignore the compensation order which is the subject of the Board's review. Here the compensation order reflects enough confusion that we cannot say the Board's decision to affirm was supported by substantial evidence. *See Mayo v. District of Columbia Dep't of Employment Servs.*, 738 A.2d 807, 809 (D.C.1999) (agency's analysis revealed enough confusion that remand was necessary for further consideration and clarification).

We do not rest our decision to remand on any one factor, but will mention a few of our concerns. The ALJ recognized that, through its demonstrative evidence (involving the refrigerated display case), the employer was asserting that "it is mechanically impossible for the soda container door to injure both knees upon closing as [Ms. Proctor] alleges." Soon thereafter the ALJ noted that she "does not reject employer's theory that the door of the soda container could not have struck both of [Ms. Proctor's] knees with one closing, as alleged...." Confusingly, however, the ALJ concluded that the medical history of Ms. Proctor's consistent complaints "outweighs employer's theory." As we see it,

there was no weighing to be done if, as the employer asserted, it was mechanically impossible for the swinging door to have injured both knees as petitioner alleged. Perhaps the ALJ had come to a point where she was in fact rejecting the employer's theory of impossibility, but her order does not say so, and we "cannot properly fill the gap ... by inferring findings on a party's objections...." *Citizens Ass'n of Georgetown v. District of Columbia Zoning Comm'n,* 402 A.2d 36, 42 (D.C. 1979). Rather, "the agency's own findings 'must support the end result in a discernible manner, and the result reached must be supported by subsidiary findings of basic facts on all material issues.'" *Id.* (quoting *Dietrich,* 293 A.2d at 473 (emphasis omitted)).

Another problem is the ALJ's reliance on the opinion of Dr. Klimkiewicz to support her conclusion that the incident of May 29, 2001, tore the meniscus in petitioner's right knee. In a report dictated after an appointment with Ms. Proctor in February 2002, Dr. Klimkiewicz stated that

> it is not unreasonable to suppose that this [meniscal tear] did, in fact, occur at the time of the injury. However, this cannot be proved. She does state a remote history and I feel as though if this was not caused at the time of the injury, certainly this may have been an acute on chronic phenomenon as far as the meniscal tearing is concerned. Without an MRI scan prior to this injury, it is difficult to determine exactly when this happened.

The doctor's opinion on this point was highly equivocal and we do not believe that "a reasonable mind might accept [it] as adequate [by itself] to support" the ALJ's conclusion. *Children's Defense Fund,* 726 A.2d at 1247. This is especially true in light of Dr. Gordon's testimony that "[t]he

only way you can injure your meniscus is twisting the meniscus between the bones on each side of the joint with a very significant twisting type injury." As the ALJ acknowledged, "Employer asserts the evidence of record has established, and claimant does not contend to the contrary, that a twisting injury did not occur on May 29, 2001."

There may have been substantial evidence to support a conclusion that, rather than causing the meniscal tear, the incident of May 29 aggravated a pre-existing injury. Indeed, Ms. Proctor's attorney began his opening statement at the hearing by explaining that "the evidence and the theory that we are espousing ... is that [the] May 29, 2001 incident aggravated [Ms. Proctor's] knees to a condition which has not yet subsided." Moreover, Dr. Klimkiewicz seems to have expressed the opinion that the work incident aggravated her "previous swelling and symptoms in [the right] knee." Nevertheless, the ALJ confusingly noted that Ms. Proctor "is properly not alleging an aggravation of a pre-existing condition...."

## IV. Conclusion

██ "[A]n administrative order can only be sustained on the grounds relied on by the agency." *Georgetown University v. District of Columbia Dep't of Employment Servs.,* 862 A.2d 387, 389 (D.C.2004) (internal quotation marks and citation omitted). Moreover, the overall confusion in the compensation order prevents us from performing our reviewing function. We therefore vacate the judgment and remand for further consideration.

*So ordered.*