*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-AA-912

07/13/2017

FILED
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

RACHAEL B. STOREY, PETITIONER,

v.

DISTRICT OF COLUMBIA
DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

THE CATHOLIC UNIVERSITY OF AMERICA and
LIBERTY MUTUAL INSURANCE COMPANY, INTERVENORS.

Petition for Review of a Decision of the Compensation Review Board of the
District of Columbia Department of Employment Services
(CRB-15-24)

(Submitted November 8, 2016                     Decided June 22, 2017)

(Amended July 13, 2017)[*]

*Sheila M. Geraghty* and *David Hryck* were on the brief for petitioner.

*Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General, were on the statement in lieu of brief for respondent.

*Christopher R. Costabile* was on the brief for intervenors.

---

[*] This amended opinion reflects an additional clarifying sentence on p. 3.

Before BLACKBURNE-RIGSBY, *Chief Judge*,[*] and WASHINGTON[+] and BELSON, *Senior Judges*.

BLACKBURNE-RIGSBY, *Chief Judge*: Under the District of Columbia's Workers' Compensation Act, D.C. Code §§ 32-1501 to -1545 (2012 Repl.), a claimant alleging a work-related injury is entitled to a statutory presumption that his or her injury comes within the purview of the Act if the claimant is able to make "some 'initial demonstration' of (1) an injury; and (2) a work related event, activity, or requirement which has the potential of resulting in or contributing to the injury." *Georgetown Univ. v. District of Columbia Dep't of Emp't Servs.*, 830 A.2d 865, 870 (D.C. 2003) ("*Georgetown Univ. I*"); *see also* D.C. Code § 32-1521 (explaining the presumption). If the claimant is able to satisfy this "threshold requirement," then the burden is on the employer to convince the fact finder through "substantial evidence" that is "specific and comprehensive enough to sever" the causal connection between the alleged injury and the employment. *Georgetown Univ. I*, *supra*, 830 A.2d at 870.

---

[*] Chief Judge Blackburne-Rigsby was an Associate Judge at the time of submission. Her status changed to Chief Judge on March 18, 2017.

[+] Senior Judge Washington was the Chief Judge at the time of submission. His status changed to Senior Judge effective March 20, 2017.

This appeal asks us to consider whether an Administrative Law Judge ("ALJ") is authorized to make credibility determinations and weigh a claimant's evidence in determining whether the claimant has met his or her "threshold requirement," to be entitled to the statutory presumption of compensability. For the reasons that follow, we hold that an ALJ may not assess the credibility of a claimant's evidence at this initial stage. Instead, the claimant is entitled to the statutory presumption that the injury arose during the course of employment and therefore entitled to workers' compensation benefits, so long as he or she presents "some evidence" to establish a *prima facie* case of a work-related injury. *Wash. Post v. District of Columbia Dep't of Emp't Servs.*, 852 A.2d 909, 911 (D.C. 2004). The burden is then on the employer to rebut the presumption that an employee's injury was, in fact, not related to his or her employment. *Id.* The employer can rebut the presumption by proffering substantial evidence of non-causation, i.e., evidence that is "specific and comprehensive enough" that a "reasonable mind might accept it as adequate to contradict the presumed connection between the event at work and the employee's subsequent disability." *Id.* (footnote, citation, internal quotation marks and brackets omitted). This, again, is not a matter as to which the ALJ is to make credibility determinations. Only if the employer is able to rebut the presumption and the burden returns to the claimant is the ALJ entitled to make credibility determinations.

In this case, petitioner Rachael Storey filed a claim for workers' compensation benefits on the basis that she suffered from a panoply of illnesses that rendered her unable to work due to her exposure to mold and chemicals while employed at intervenor The Catholic University of America ("Catholic University" or "employer").[1]  Ms. Storey submitted medical records, evidence of her work environment, opinions from numerous physicians, and her own testimony at the administrative hearing.  In a written order, ALJ Linda F. Jory denied Ms. Storey's claim for benefits.  The ALJ denied Ms. Storey's claim largely because she found that Ms. Storey's testimony was not credible. The ALJ determined that Ms. Storey's testimony exhibited "selective memory" on the stand, and that she intentionally "fabricat[ed] her story in order to further her claim."  The ALJ also discredited the physician opinions that Ms. Storey had submitted into evidence because, in the ALJ's view, the diagnoses were based on Ms. Storey's unreliable assertions as to her own health and work environment.  Consequently, the ALJ concluded that Ms. Storey failed to produce "credible" evidence of an injury and of a work-related event with the potential of causing injury sufficient to trigger the statutory presumption that her injury was compensable under the Act.  Having concluded that Ms. Storey was not entitled to the statutory presumption, the ALJ

---

[1]  The insurance carrier, Liberty Mutual Insurance, is also an intervenor in this action.

made no findings of fact and conclusions of law on whether the employer produced enough evidence to rebut Ms. Storey's claim. In a two-to-one decision, a majority of the Compensation Review Board ("CRB" or "Board") affirmed the ALJ's decision. The CRB concluded that the ALJ did not err when she refused to accord Ms. Storey the statutory presumption based on the ALJ's decision that Ms. Storey's testimony was not credible, and that no remand was required even if the ALJ did err because the evidence demonstrated that "only but one outcome would occur[.]"

We disagree with the CRB's decision. The ALJ erred by assessing the credibility of Ms. Storey's testimony at the initial stage of determining whether she was entitled to the statutory presumption that her injury fell within the purview of the Act. Moreover, a remand is required because, even if the ALJ again discredits Ms. Storey's testimony after affording her the statutory presumption, the ALJ did not adequately consider other evidence in the record, separate and apart from Ms. Storey's testimony, supporting Ms. Storey's claim that she had suffered an injury and that her workplace environment had the potential of causing her injury. Accordingly, we remand to the CRB with instructions that it remand this case back to the ALJ to reconsider Ms. Storey's claim after first affording her the statutory

presumption of compensability. It is not clear to us from this record that "only but one outcome would occur," even excluding Ms. Storey's testimony.

## I. Factual Background

### A. *Ms. Storey's Employment with Catholic University*

Ms. Storey was employed by Catholic University, first as a media lab director and later as an adjunct professor of Media Studies, from November 2005 to August 2010. During her time of employment, Ms. Storey principally worked in the basement of Catholic University's O'Boyle Hall. Ms. Storey testified that she believed her work environment inside of O'Boyle Hall caused her alleged injuries. According to Ms. Storey, she started to develop "creeping" medical problems almost immediately after she began work at O'Boyle Hall. It started out with relatively minor symptoms like itchy eyes and rashes on her hands and face, but progressively got worse. Ms. Storey testified that, as she continued to work in O'Boyle Hall, she began to suffer from intense chronic fatigue, daily migraines, cognition problems (such as short-term memory loss), abdominal problems, chronic joint pain, weakness in the left side of her body, seizure-like symptoms, and other illnesses. As a result, Ms. Storey took a medical leave of absence from

May 2008 to January 2009, and again from August 2009 to August 2010, when her contract expired and was not renewed. Ms. Storey also testified at the hearing that she continued to suffer from these medical problems that rendered her unable to work.

Ms. Storey believed that her medical problems were caused by O'Boyle Hall's long-standing mold problem, and that her protracted exposure to mold was the source of her escalating medical problems.[2] Ms. Storey also points to two specific incidents while working at O'Boyle Hall, which she claims exacerbated her already fragile condition. First, the building suffered from a flood in January 2008. This fact is undisputed by the employer. She claimed that, as a result of the flood, the "air was thick with . . . a combination of charred glass and fumes" for weeks and there was visible mold on the floors and walls. Second, Ms. Storey claimed that in March 2009 she had seizure-like episodes after discovering a dark room full of open containers of chemicals used in film processing.

---

[2] According to Ms. Storey's testimony, she found out that O'Boyle Hall suffered a flood sometime in 2004, which likely caused the mold. A Catholic University witness, Stephen McKenna, Chairman of the Media Studies Department, also acknowledged that there was a "small water incursion[]" in 2004, although that testimony appeared to have been struck from the record.

### B. Medical and Environmental Evidence

Other than Ms. Storey's own testimony, there was conflicting evidence, some that favored Ms. Storey's claim that she suffered from a work-related injury as a result of her long-term exposure to mold and chemicals, and other evidence that favored Catholic University's defense that Ms. Storey had not suffered from an injury. Evidence in favor of Catholic University's position included many of Ms. Storey's own medical records of testing conducted on her beginning in 2006 and continuing throughout her employment with Catholic University, such as CAT scans, X-rays, and blood work that seemed to show that Ms. Storey was overall in good health. Catholic University also proffered two favorable expert opinions, which claimed that Ms. Storey did not suffer any injury resulting from working inside of O'Boyle Hall.[3] Lastly, Catholic University produced an "Indoor Air Quality Survey" of O'Boyle Hall that was conducted by a third-party, Applied Environmental, Inc., following the flooding incident in January 2008. The report

---

[3] Specifically, there was an Independent Medical Evaluation ("IME") of Ms. Storey by Dr. Ross S. Myerson, who opined that "Ms. Storey's multiple somatic complaints are not supported by any credible objective findings," and that there is no evidence that "Ms. Storey's numerous complaints and symptoms are causally related to environmental exposure in her work place." Additionally, there was an expert report by Dr. Hung Cheung, who concluded that there was no causation between Ms. Storey's claimed symptoms and her exposure to the "alleged mold or any mold toxin exposure or any other toxic chemicals related to her work environment."

contained both the data set and Applied Environmental, Inc.'s professional assessment of the data. Applied Environmental, Inc., in its professional assessment, concluded that "[d]irect read measurements for CO, $CO_2$, and respirable particulate were all within acceptable limits[,]" and that "[a]irborne fungal spore concentrations were low, and consistent with the outdoor concentrations."

Other evidence, however, supported Ms. Storey's claim that she had suffered a work-related injury as a result of her exposure to contaminants in O'Boyle Hall. For example, a medical report from George Washington University Hospital dated March 21, 2009, confirmed Ms. Storey's testimony that she had suffered an allergic reaction as a result of her exposure to film chemicals from the dark room. A medical exam by Medstar Washington Hospital Center conducted on July 10, 2014, also revealed that Ms. Storey had a "[d]ramatically enlarged fibroid uterus with areas of cystic degeneration."[4] There was also objective evidence

---

[4] The CRB dissenting opinion identified additional medical testing that supports Ms. Storey's claim, including: (1) an ultrasound showing "[r]ight thyroid nodules" in Ms. Storey's neck; (2) a CT scan showing a right thyroid nodule and mild maxillary sinus mucosal disease; (3) Dr. Allan D. Leiberman's observation that Ms. Storey "developed multiple stroke like episodes" on entry to the "bio detoxification unit, during exercise[,] and occasionally while just sitting"; and (4) Dr. Leiberman's observation that allergy tests exposing her to "petro chemicals . . . provoked many of her signs and symptoms."

demonstrating that there was mold inside of O'Boyle Hall.[5]   Moreover, seven different physicians submitted reports supporting Ms. Storey's claim that she had suffered an environmentally-induced injury as a result of her time working at O'Boyle Hall.[6]

---

[5]   According to the CRB dissent, this included:  (1) photographs of the work environment; (2) a video; (3) Applied Environmental, Inc.'s report identifying mold spores; and (4) Catholic University's witness, Dr. Stephen McKenna's testimony, who agreed with Ms. Storey's observations that after the flood there was mold and that the air was "humid, chalky, musty."  There was also evidence of chemicals in the workplace, including:  (1) photographs; (2) a video; and (3) a report acknowledging the presence of film chemicals inside of O'Boyle Hall.

[6] The medical expert reports were as follows.  First, Dr. Richard Shoemaker diagnosed Ms. Storey with a "complex, multisystem, multisymptom illness termed a chronic inflammatory response syndrome," which he concluded is "typical of those acquired following exposure to the interior environments of water-damaged buildings."  Second, Dr. Barbara Solomon assessed Ms. Storey's condition and "felt that [Ms. Storey] was suffering an environment related illness from mold exposure."  Third, Dr. Ixtapa Zihuatanejo, a practitioner of Traditional Chinese Medicine, diagnosed Ms. Storey as having "been poisoned by biotoxins."  Fourth, Dr. Allan D. Lieberman conducted an extensive evaluation of Ms. Storey's physiology and medical history, and assessed the environmental tests conducted on O'Boyle Hall and concluded that Ms. Storey "was injured by moisture, mold, particulates and exposure to multiple industrial chemicals in her work place and that all of her current conditions and diagnoses were caused by the exposure to mold and chemicals in the work place."  Fifth, Dr. Jack Thrasher, a toxicology expert, reviewed Ms. Storey's medical records, the environmental records of O'Boyle Hall, and some of the other physician opinions, and concluded that Ms. Storey's five year "history of employment with exposure to the water-damaged environment at the Catholic University . . . to a reasonable degree of scientific certainty within [his] profession can cause and did cause Ms. Storey's multi-system injuries and dysfunctions."  Sixth, Dr. Leonard Vance, an expert on environmental injuries and mold, concluded that O'Boyle Hall was "contaminated with excessive levels of mold and moisture conditions throughout the time she

(continued…)

### C. ALJ and CRB Decisions

Following the administrative hearing in which all of the above exhibits were submitted into evidence, the ALJ issued a Compensation Order denying Ms. Storey's claim. Simply put, the ALJ discredited Ms. Storey's testimony that she had suffered a work-related injury, and that O'Boyle Hall was the cause of her injury. The ALJ discredited Ms. Storey on the ground that she believed Ms. Storey was not forthcoming and candid during her cross-examination. The ALJ noted that while Ms. Storey "proceeded to testify under direct examination without hesitation or lack of memory concerning chronological details of her employment beginning in 2005 . . . under cross-examination [she] suddenly did not remember [] more recent events or medical treatment." The ALJ also discredited all of the expert opinions that supported Ms. Storey's claim, asserting that their reports relied on Ms. Storey's recitation of her own medical and work history. The ALJ did not explain exactly how these expert opinions were based solely on Ms. Storey's statements. Accordingly, in the ALJ's view, there was not "sufficient evidence to

_____

(…continued)
worked there," including her exposure to "aspergillus" and "stachybotrys," that "can cause the adverse health [e]ffects reported and experienced by Ms. Storey." Seventh, Dr. Adam Wolff concurred with Drs. Solomon and Shoemaker's diagnosis of "Chronic Inflammatory Response Syndrome" as a result of Ms. Storey's exposure to mold and chemicals. It appears that, at a minimum, Drs. Shoemaker, Solomon, and Lieberman provided treatment to Ms. Storey.

invoke the presumption of compensability" at the initial stage "as the record lacks *credible* evidence of an injury and of a work-related event which has the potential of causing the injury and/or disability." (emphasis in original).

A majority of the CRB panel affirmed the ALJ's decision. First, the CRB affirmed the ALJ's decision to discredit Ms. Storey's testimony. Second, the CRB agreed with the ALJ's determination that, since she did not credit Ms. Storey's testimony, Ms. Storey failed to establish a work-related injury at the initial stage that would entitle her to the statutory presumption of compensability. The CRB explained, "[T]here would be no legitimate reason for the presumption of compensability to be invoked based upon evidence that is not credible." Lastly, the CRB held that even if the ALJ erred in not affording Ms. Storey the presumption, no remand was required "as only but one outcome would occur when the evidence was weighed . . . ."

In a lengthy dissenting opinion, however, CRB panel member Administrative Appeals Judge ("AAJ") Melissa Lin Jones argued that the presumption of compensability should have been afforded to Ms. Storey without regard to her credibility as a witness. AAJ Jones also argued that, even deferring to the ALJ's credibility decision of Ms. Storey's testimony, there was sufficient,

additional evidence in the record to substantiate Ms. Storey's claim of a work-related injury that would independently give rise to the statutory presumption, and she identified numerous exhibits that could independently establish a work-related injury. This petition for review of the CRB's Decision and Order followed.

## II. Discussion

Our review of the CRB's Decision and Order "is limited to determining whether the decision is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Reyes v. District of Columbia Dep't of Emp't Servs.*, 48 A.3d 159, 164 (D.C. 2012) (citation omitted). However, this does not mean that our review is "toothless." *Georgetown Univ. v. District of Columbia Dep't of Emp't Servs.*, 916 A.2d 149, 151 (D.C. 2007) ("*Georgetown Univ. II*"). In conducting our review of the agency's decision, we must be assured of three things: (1) that "the agency has made a finding of fact on each material contested issue of fact;" (2) that "the agency's findings are supported by substantial evidence on the record as a whole;" and (3) that the agency's "conclusions flow rationally from those findings and comport with the applicable law." *Id.* at 151 (citation and internal quotation marks omitted). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Id.* (citation and internal quotation marks omitted). Ultimately, this court must be assured that the agency fully and adequately considered all of the material issues and disclosed a reasoned basis for its decision. *Id.* Further, while we review the CRB's decision and not that of the ALJ's, "we cannot ignore the [ALJ's] compensation order which is the subject of the [CRB's] review." *Id.*

First, we must decide whether an ALJ is authorized to weigh the evidence and make credibility findings in determining whether a claimant has presented "some evidence" of a work-related injury, to be entitled to the statutory presumption of compensability. In other words, we must decide whether an ALJ can find that a claimant has failed to demonstrate that he or she is entitled to the presumption even though the claimant produced *some evidence* to establish a *prima facie* claim of a work-related injury, if the ALJ finds the claimant's evidence not credible. Second, we must also decide whether, on the facts of this particular case, the CRB was correct in concluding that a remand would be futile, given that the ALJ has expressly discredited Ms. Storey based on her demeanor and perceived lack of candor. In considering these questions, we think it useful to first explore the burden-shifting scheme of workers' compensation cases and the stated purpose of the statutory presumption that is accorded to claimants seeking benefits.

*A. The Presumption of Causation*

D.C. Code § 32-1521 (1) states: "In any proceeding for the enforcement of a claim for compensation under [the Workers' Compensation Act] it shall be *presumed*, in the absence of evidence to the contrary . . . [t]hat the claim comes within the provisions of [the Act.]" (emphasis added). In *Ferreira v. District of Columbia Department of Employment Services.*, 531 A.2d 651 (D.C. 1987), this court reiterated how that statutory presumption is to be applied. "In order to benefit from the presumption [that a claim falls within the Act], a claimant needs to make some 'initial demonstration' of the employment-connection of the disability." *Id.* (citing 1 A. Larson, Workmen's Compensation Law § 10.33 at 3-138 (1986)). This is a relatively low evidentiary showing. Ever since *Ferreira*, we have explained that, to benefit from this presumption, "an employee need only present 'some evidence' of two things: (1) a disability, and (2) 'a work-related event, activity, or requirement which has the *potential* of resulting in or contributing to the . . . disability.'" *Wash. Hosp. Ctr. v. District of Columbia Dep't of Empt' Servs.*, 744 A.2d 992, 996 (D.C. 2000) (quoting *Ferreira*, *supra*, 531 A.2d at 655) (emphasis and alterations in original). "The presumption then operates to establish a causal connection between the disability and the work-related event, activity, or requirement." *Ferreira*, *supra*, 531 A.2d at 655.

We require the claimant to produce only "some evidence" of a disability and a work-related event for the claimant to benefit from the statutory presumption, because the presumption is "designed to effectuate the humanitarian purposes of the statute" and "reflects a strong legislative policy favoring awards in arguable cases." *Ferreira*, *supra*, 531 A.2d at 655 (quoting *Wheatley v. Adler*, 407 F.2d 307, 313 (D.C. Cir. 1968) (en banc)). Further, the Act and its provisions are "to be construed liberally for the benefit of employees and their dependents." *Id.* (citation and internal quotation marks omitted). The employer, on the other hand, has a higher evidentiary burden to rebut the presumption. "To rebut the presumption the employer must show by *substantial evidence* that the disability did not arise out of and in the course of the employment." *Waugh v. District of Columbia Dep't of Emp't Servs.*, 786 A.2d 595, 600 (D.C. 2001) (emphasis added) (citation and internal quotation marks omitted). The evidence must be "specific and comprehensive enough to sever the potential connection between a particular injury and a job-related event." *Id.* (quoting *Ferreira*, *supra,* 531 A.2d at 655).

Based on the above, we conclude that a claimant is entitled to the presumption so long as he or she provides evidence establishing a *prima facie* case of a work-related injury. *Georgetown Univ. I*, *supra*, 830 A.2d at 870-71 (explaining that the presumption applies where the claimant establishes a *prima*

*facie* case); *see Prima Facie Evidence*, Black's Law Dictionary, at 877 (10th Ed. 2014) (defining *prima facie* evidence as "[e]vidence that will establish a fact or sustain in a judgment unless contradictory evidence is produced). And that, it is not appropriate for the ALJ to weigh the evidence or make credibility findings at this initial stage in assessing whether a claimant has established a *prima facie* case of a work-related injury. *See, e.g.*, *Burke v. Scaggs*, 867 A.2d 213, 218-19 (D.C. 2005) (credibility findings and weighing of the evidence are not appropriate in determining whether a plaintiff has established a *prima facie* case for a directed verdict).

In deciding that the ALJ is entitled to consider the credibility of the claimant's evidence at the presumption stage, the CRB majority relied heavily on this court's decision in *Murray v. District of Columbia Department of Employment Services*, 765 A.2d 980 (D.C. 2001), where this court alluded to the possibility that the ALJ could weigh the evidence in determining whether the claimant is entitled to the presumption. Specifically, in *Murray*, the hearing examiner concluded that Murray had failed to present any credible evidence that he sustained an accidental injury arising out of employment. *Id.* at 983. Without considering whether the hearing examiner could consider credibility at the presumption stage, we reversed because we concluded that some of those credibility determinations were based on

erroneous factual determinations. *Id.* at 984. *Murray* does not bind this court because "the judicial mind [has not] been applied to and passed upon the precise question" that is before us today. *Parker v. K&L Gates, LLP*, 76 A.3d 859, 873 (D.C. 2013) (emphasis added) (citation and internal quotation marks omitted). Because the question presented here was not expressly ruled upon in *Murray*, we are not bound by that decision.

Further, our decision here, regarding a physical injury alleged to have been caused by work, is not constrained by *Ramey v. District of Columbia Department of Employment Services*, 997 A.2d 694 (D.C. 2010), pertaining to the appropriate burden-shifting scheme for psychological injuries caused by employment-related stress. *Id.* at 697. In *Ramey*, we adopted the CRB's formulation of the appropriate burden-shifting scheme for so-called "mental-mental" case:

> [A]n injured worker alleging a mental-mental claim invokes the statutory presumption of compensability by showing a psychological injury and actual workplace conditions or events which could have caused or aggravated the psychological injury. *The injured worker's showing must be supported by competent medical evidence.* The ALJ, in determining whether the injured worker invoked the presumption, must make findings that the workplace conditions or events existed or occurred, *and must make findings on credibility*. If the presumption is invoked, the burden shifts to the employer to show, through substantial evidence, the psychological injury was not caused or aggravated by workplace conditions or events. If the employer succeeds, the

> statutory presumption drops out of the case entirely and the burden reverts to the injured worker to prove by a preponderance of the evidence that the workplace conditions or events caused or aggravated the psychological injury.

*Id.* at 699-700 (emphasis added). Physical injury cases differ from "mental-mental" cases because they do not require the claimant "to present expert opinion of causation in order to enjoy the benefit of the presumption." *McNeal v. District of Columbia Dep't of Emp't Servs.*, 917 A.2d 652, 658 (D.C. 2007).

Moreover, credibility determinations at the initial presumption stage also contravene the legislative purpose of the Act, which favors granting "awards in arguable cases." *Ferreira*, *supra*, 531 A.2d at 655. A review of the Report prepared by the Council of the District of Columbia prior to enacting the original Workers' Compensation Act of 1979, reveals that the purpose of the presumption is to place the "burden of proof [] on the employer or insurer to show that the employee is not entitled to compensation," and that "ambiguities are [to be] construed in favor of the disabled worker." D.C. Council, Report on Bill 3-106, "District of Columbia Workers' Compensation Act of 1979" at 15 (Jan. 16, 1980). If, as the majority of the CRB and Catholic University claim, an ALJ is allowed to discredit an employee's evidence at the presumption stage, without even needing to consider the employer's rebuttal evidence, then the statutory purpose of the

presumption would be contravened. Essentially, the burden of proof would be on the *employee* to demonstrate that he or she suffered a work-related injury, rather than on the *employer* to show that the claimant did not suffer such an injury. That formulation of the burden of proof is in tension with what the Council intended when it enacted the statutory presumption. *See* D.C. Council, Report on Bill 3-106, *supra*, at 15 (burden is on the employer to demonstrate that employee did not suffer a compensable injury); *see, e.g.*, *McNeal*, *supra*, 917 A.2d at 658 (a claimant only has the burden when employer presents evidence that "rebut[s] the presumed causal connection"); *see also Clark Constr. Grp., Inc. v. District of Columbia Dep't of Emp't Servs.*, 123 A.3d 199, 203 (D.C. 2015) (court will look to the legislative history where there are persuasive reasons to do so).

Our decision also finds support from courts elsewhere that have considered the issue. As noted by the CRB dissenting opinion, Alaska's Workers' Compensation Act has the same statutory presumption language as the District of Columbia's Workers' Compensation Act.[7] Alaska Stat. § 23.30.120 (a)(1) (1988) states, "In a proceeding for the enforcement of a claim for compensation under this

---

[7] Larson's explains that only a few jurisdictions, including Alaska and New York, apply a presumption of compensability to all workers' compensation cases. Larson's Workers' Compensation Law § 7.04 [3], at 7-47-48 (2014 Rev. Ed.). The District of Columbia also applies this presumption in workers' compensation cases.

chapter it is *presumed*, in the absence of substantial evidence to the contrary, that . . . the claim comes within the provisions of this [Act]." (emphasis added). The Supreme Court of Alaska has expressly held that in determining whether the presumption should attach, credibility is not an appropriate factor to consider. Instead, "'[f]or purposes of determining whether the claimant has established the preliminary link, only evidence that tends to establish the link is considered — *competing evidence is disregarded.*' The [fact finder] '*need not concern itself with the witnesses' credibility*' when 'making its preliminary link determination.'" *McGahuey v. Whitestone Logging, Inc.*, 262 P.3d 613, 620 (Alaska 2011) (emphasis added) (footnotes omitted).

The purpose of the claimant's initial showing at the presumption stage is to ensure that there is a "causal connection between the disability" and the employer, so that the claim is appropriately adjudicated as a workers' compensation case. *See, e.g.*, *Ferreira*, *supra*, 531 A.2d at 654 (the purpose of the Workers' Compensation Act was so that employees and employers can both gain by a system in which common law tort remedies were discarded). Once we are satisfied that there is a *prima facie* causal connection between the injury and employment, however, the burden of proof is on the employer to rebut the presumption that the injury falls within the purview of the Act through "substantial evidence." *McNeal*,

*supra*, 917 A.2d at 656 (explaining employer's burden). Only if the employer is able to rebut the presumption of compensability, will the burden turn once again to the employee to prove his or her claim, and it is only at this stage that the ALJ is able to make assessments of credibility. *See, e.g.*, *McGahuey*, *supra*, 262 P.3d at 621.

In this case, the ALJ misplaced that burden of proof by considering the credibility of Ms. Storey's testimony in determining whether she was entitled to the statutory presumption. By doing so, the ALJ essentially placed the burden on Ms. Storey to prove through "substantial evidence" that she did, in fact, suffer a work-related injury. This goes against the legislative intent of the Act.

**B. Remanding to the ALJ**

We next consider whether a remand is necessary, or whether the CRB was correct in concluding that a remand is unnecessary because, even if the ALJ afforded Ms. Storey the presumption, the "[e]mployer rebutted the presumption through the IME's [sic] [reports] submitted into evidence, [and] the credibility finding would still prove lethal to [Ms. Storey's] case."

We disagree with the CRB's conclusion that the employer rebutted the presumption, assuming that it was afforded to Ms. Storey, or that the discrediting of Ms. Storey's testimony proved "lethal" to her workers' compensation claim. The ALJ's Compensation Order did not address the issue of whether the employer's evidence rebutted the presumption. The Compensation Order simply stated that, in the ALJ's view, "the record does not contain sufficient evidence to invoke the presumption of compensability . . . [and that] [w]ithout the benefit of the presumption . . . it cannot be concluded that claimant has sustained any injuries that arose in and out of her employment." Because the ALJ did not make a finding on whether the employer's evidence was sufficient to rebut the statutory presumption, the CRB's conclusion does not "flow rationally from [the ALJ's] findings of fact."[8] *Reyes*, *supra*, 48 A.3d at 164 (citations and internal quotation marks omitted).

---

[8] While the ALJ did mention Ms. Storey's and Catholic University's opposing medical experts, this was done in the context of the factual background section without express credibility findings by the ALJ. As this court explained in *Jones v. District of Columbia Department of Employment Services*, what is required of the ALJ in making factual findings includes:

> A simple straight-forward statement of what happened. *A statement of what the [ALJ] finds has happened; not a statement that a witness, or witnesses, testified thus and so.* It is [a] statement in sufficient relevant detail to make it mentally graphic, i.e., it enables the reader to picture in his mind's eye what happens. And when the reader is a

(continued…)

Further, we conclude that the ALJ was premature in finding that Ms. Storey's lack of credibility tainted all of her other evidence which demonstrated that she may have suffered a work-related injury as a result of her exposure to contaminants while working in O'Boyle Hall. The ALJ did not adequately explain, with specificity, how Ms. Storey's lack of credibility taints all of Ms. Storey's additional exhibits, which included medical test results and physician diagnoses.

Moreover, a review of Ms. Storey's exhibits establishes a *prima facie* work-related injury that is sufficient for Ms. Storey to be entitled to the presumption. There is objective evidence that Ms. Storey suffered an injury — there are medical records demonstrating that Ms. Storey suffered an allergic attack as a result of her exposure to film chemicals. There are also medical records of Ms. Storey's problems with her thyroid glands and uterus, and medical professionals directly observed Ms. Storey having seizure-like symptoms. See *supra* at 9 and note 4.

_____

(…continued)

> reviewing court[,] the statement must contain all the specific facts relevant to the contested issue or issues so that the court may determine whether the [ALJ] has resolved those issues in conformity with the law.

41 A.3d 1219, 1226 (D.C. 2012) (quoting *Whispering Pines Home for Senior Citizens v. Nicalek*, 333 N.E.2d 324, 326 (Ind. Ct. App. 1975)) (emphasis added) (original brackets omitted).

Additionally, there is also evidence, separate from Ms. Storey's testimony, that O'Boyle Hall contained mold and that there were potentially harmful chemicals inside of the building, such as pictures of what appears to be mold and chemical bins, and Applied Environmental, Inc.'s data showing the existence of mold inside of the building.  See *supra* note 5.

Finally, there were numerous physician reports diagnosing Ms. Storey with medical conditions related to her work environment at O'Boyle Hall.  While the information contained within the reports are too voluminous to recount fully in this opinion, we note that Drs. Shoemaker, Solomon, and Lieberman all appeared to have treated Ms. Storey, and thus have a firsthand basis of knowledge of her condition and the possible causes of that condition.  These expert physicians did not rely exclusively on Ms. Storey's description of her illnesses in making their diagnoses.  *See* supra note 6.  These treating physicians are also entitled to preference over the IME physician reports proffered by the employer.  *Jackson v. District of Columbia Dep't of Emp't Servs.*, 979 A.2d 43, 49 (D.C. 2009).  The ALJ was thus required to explicitly address why these treating physician reports should have been be rejected, which the ALJ did not do.  *Id.*  We further note that two environmental injury experts, Dr. Thrasher, a toxicology expert, and Dr. Vance, an environmental injury and mold expert, also opined that Ms. Storey's

condition was related to her work environment in their professional opinions. These doctors reviewed Ms. Storey's medical records, the environmental records of O'Boyle Hall as tested by Applied Environmental, Inc., and the opinions of some of the other physicians. The ALJ did not explain why their reports, which relied mostly on objective data, should also have been rejected.[9]

Accordingly, the ALJ's decision to reject all of Ms. Storey's evidence, including many objective medical exhibits and physician reports that sufficiently demonstrate a *prima facie* case of an injury caused by her work environment, is not supported by substantial evidence in the record. The CRB therefore erred in affirming the ALJ's Compensation Order denying Ms. Storey benefits. Accordingly, we reverse the CRB's Decision and Order and remand this case to the CRB to direct the ALJ to afford Ms. Storey the presumption and decide anew

---

[9] In its brief, Catholic University argues that Dr. Shoemaker had given up his license to practice medicine, so he cannot be considered Ms. Storey's treating physician. Catholic University presents no support in making this assertion. Dr. Shoemaker was a licensed physician at the time he treated Ms. Storey.

Catholic University also argues that no remand is necessary because Dr. Shoemaker is not a credible expert and that all of the other doctors' reports are somewhat based on Dr. Shoemaker's initial testing of Ms. Storey. Without regard to the validity of that assertion, such credibility assertions and factual findings are for the ALJ to make, and not by this court or the CRB. *See Marriott Int'l v. District of Columbia Dep't of Emp't Servs.*, 834 A.2d 882, 887 (D.C. 2003) (an ALJ's credibility findings are given substantial weight).

whether the employer rebuts that presumption through substantial evidence. In so doing, the ALJ must also "consider alternative work-related causes of petitioner's disability" even if it rejects Ms. Storey's "theory of employment causation." *Ferreira*, *supra*, 531 A.2d at 657-58.

## III. Conclusion

Based on our case law and the "humanitarian purposes" of the Act, we hold that an ALJ cannot refuse to accord an employee seeking benefits the statutory presumption on the basis that the claimant's evidence, which on its face is sufficient to show both an injury and a work-related event that has the potential of causing the injury, was simply not credible. To hold otherwise would contravene our decision in *Ferreira* and its progeny, in which we have repeatedly said that all that is required of the claimant for the presumption to apply is an "initial demonstration" consisting of "*some evidence*" of a work-related injury. 531 A.2d at 655 (emphasis added).

Accordingly, the ALJ must afford the statutory presumption of compensability to an employee seeking workers' compensation for a physical injury, so long as the employee establishes a *prima facie* "'initial demonstration' of

(1) an injury; and (2) a work related event, activity, or requirement which has the potential of resulting in or contributing to the injury." *Georgetown Univ. I*, *supra*, 830 A.2d at 870. Credibility determinations are not an appropriate consideration at this initial stage.

In this case, the CRB erred by affirming the ALJ's decision finding that Ms. Storey was not entitled to the presumption because she had failed to present "credible" evidence of a work-related injury. The CRB also erred by not remanding the case to the ALJ for the ALJ to consider the additional evidence, independent of Ms. Storey's testimony, establishing a work-related injury. Accordingly, this case is

*Reversed and Remanded.*